### UNITED STATES of America ex rel. Joseph Jude OLIVER

v.

### COMMONWEALTH OF PENN-SYLVANIA.

#### Civ. A. No. 70–654.

United States District Court, E. D. Pennsylvania.

Dec. 28, 1970.

Joseph Jude Oliver, pro se.

Robert L. VanHoove, Dist. Atty., Berks County, Reading, Pa., for defendant.

## OPINION AND ORDER

TROUTMAN, District Judge.

Relator, a State prisoner, is presently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania, serving a sentence of ten to twenty years for rape, sodomy, indecent assault, assault with intent to ravish, conspiracy and assault and battery. Sentence was imposed on May 29, 1969, by the Berks County Court of Common Pleas following a not-guilty plea and a trial by jury. Relator's motions for a new trial and in arrest of judgment were denied by the Berks County Court in an opinion and order by Judge Hess dated April 24, 1969. This denial was affirmed per curiam by the Pennsylvania Superior Court on November 12, 1969, and allowance of an appeal in the Pennsylvania Supreme Court was denied per curiam on February 10, 1970.

Relator through direct appeal has sufficiently exhausted State procedures on the issues raised herein so as to merit our consideration of his petition. After a thorough consideration of the entire State record as it relates to the issues here raised, we find such to be factually complete and sufficient so that no further evidentiary hearing in this court is necessary or warranted. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

Relator raises two principal grounds in support of his petition for a writ of habeas corpus, namely, (1) that the in court identifications by the Commonwealth's principal witnesses should have been excluded as the product of unconstitutional police stationhouse identification procedures and (2) that the Commonwealth deliberately suppressed evidence from a police offense report during a period when the trial judge was allegedly absent from the bench.

■ Relator contends initially that police submission of photographs to the victim of the rape and to another identification witness at a time prior to his being placed in custody violated his Sixth Amendment right to counsel under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). This contention is completely without merit. At this preliminary stage of investigation, no right to counsel attaches. The Supreme Court's decisions in *Wade* and *Gilbert*, supra, do not go so far as to grant the right to counsel to one who is not yet a defendant or a suspect who has been placed in custody. See United States v. Zeiler, 427 F.2d 1305, 1307 (3rd Cir. 1970).

■ Also in connection with police employment of photographs for identification purposes, relator contends that the police showing of photographs to Donna Reed, the victim of the rape and to Michael Posta, a friend who was assaulted the same evening, was so unduly suggestive that their in court identification testimony should have been suppressed. This issue is properly governed by the standards set forth in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In *Simmons* the Supreme Court recognized that the improper use of photographs by police may cause error in identification, especially where the witnesses may have only briefly glanced at the criminal or may have seen him under poor conditions. Displaying individual photographs of a single suspect or emphasizing a single picture may increase the danger of misidentification in such circumstances. Despite these hazards, however, the Supreme Court in that same opinion also recognized the widespread effective use of photographs by police as an investigative tool in apprehending criminals and exonerating innocent suspects. Consequently, the Court ruled that each case is to be considered on its own facts and "convictions based on eyewitness testimony at trial following a pretrial identification by photograph will be set aside on that ground *only if the photographic identification was so impermissively suggestive as to give rise to a very substantial likelihood*

*of irreparable misidentification".* 390 U.S. at 384, 88 S.Ct. at 971 (emphasis ours)

Based upon the State record in the instant case, it is clear that the in court testimony of the victim of the rape and her boyfriend were not based upon *any* pre-trial identification at the stationhouse, photographic or non-photographic. Considering the entire record, it is perfectly clear from the totality of the circumstances that the photographic identification was not so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The record indicates that the rape occurred between the hours of 9 and 11 P.M. on June 17, 1967. The victim, Donna Reed, and her boyfriend, Michael Posta, clearly observed the two assailants at a well-lighted gasoline station prior to the commission of the crime. (N.T. 20–55) The boy thereafter was assaulted and the girl raped. On the night of the crime, Michael Posta gave the police a general description of the two assailants. He described them both as white and between the ages of 19 and 21 years of age. One assailant was described as being approximately 5′ 9″ tall and very dirty, wearing a white T shirt. The other man was generally described as slightly taller. (N.T. 59–68) The record indicates that Miss Reed, the victim of the rape, was with both of her assailants for approximately two hours during which time she had a sufficient opportunity to observe each of them. (N.T. 32)

At 8 A.M. of the morning following the commission of the crime, Miss Reed was shown photographs of the relator and his co-defendant. Admittedly, the record indicates that no other photographs were shown to her at that time. However, she did not discuss looking at any photographs with the police or with Michael Posta. (N.T. 30–31) The record is inconclusive as to whether she made an identification of relator after being shown the photographs. In any event, she did not base her in court identification on such events.

Later that same morning, at about 9:45 A.M., Michael Posta was shown seven photographs among which were photographs of relator and his co-defendant. He observed the photographs alone and did not discuss the results of any identification he may have made with the prosecutrix. (N.T. 63) At no point in the trial record did the Government introduce testimony on direct examination relating to the showing of photographs to the two victims of the crime. The reliability of their identification was thoroughly tested by defense counsel on extensive cross-examination.

Although the victim of the rape was shown only photographs of relator and his co-defendant, we cannot say, based on this record, that there was a substantial likelihood of irreparable misidentification. There is no indication in the record that the showing of seven photographs to Michael Posta was in any way suggestive. Furthermore, the crime was committed between 9 and 11 P.M. on June 17, 1967. The photographic showing was conducted at 8 A.M. the following morning and again at 9:45 A.M., both times very close to the commission of the crime. This is quite unlike a situation where photographs are shown after there has been a significant lapse of time between the showing and the commission of the crime. This record is replete with clear testimony by both victims of the crime that their in court identifications were not the result of any stationhouse identification, but were derived from substantial independent sources of personal observation.

As we previously noted, relator and his co-defendant were observed in a well-lighted gas station prior to the crime, and continually and periodically during the two-hour period in which the crimes were committed. There was no doubt in the mind of the prosecutrix that relator was one of the assailants. (N.T. 20) She clearly testified that her in court identification was based on her observations of relator other than those in the police station on the morning of June 18, 1967. (N.T. 33) Mi-

chael Posta was also clearly able to observe relator at the gas station and was able to describe him that evening to the police. (N.T. 58–59)

Aside from the testimony of Donna Reed and Michael Posta two other Commonwealth witnesses, both of whom had known relator prior to the date of the crime, testified that they observed relator and his co-defendant at the Hess gas station with Donna Reed and Michael Posta on June 17, 1967. Both testified that they had no difficulty in recognizing relator. (N.T. 73–88) This Court is satisfied that there is clear and convincing evidence in the record to show that no misidentification occurred in this case as a result of any photographic showing.

Relator makes a further contention concerning his identification which we consider equally without merit. Subsequent to the photographs being shown to Donna Reed and Michael Posta relator was arrested and was individually exhibited to both witnesses in the absence of counsel. Relator argues that such individual confrontation is in violation of the *Wade* and *Gilbert* rules. The *Wade* and *Gilbert* decisions were handed down by the Supreme Court only six days prior to the stationhouse confrontation in the instant case. We assume, as it is not evident from the record, that the police were unaware of the constitutional rules set forth in these decisions. Although the court in *Wade* held that a pre-trial line-up after indictment is a critical stage of the prosecution requiring the presence of counsel, the court nevertheless indicated that any compelled pre-trial confrontation must be examined to see if counsel is necessary to protect the accused's right to a fair trial and a meaningful defense. See *Wade, supra,* 388 U.S. at 226, 227, 87 S. Ct. 1926. Assuming, in this case, that the individual confrontation falls within the *Wade* decision, the in court identification testimony is not per se inadmissible in this case as the record is quite clear that no testimony concerning the individual stationhouse confrontation was elicited by the prosecution on direct examination. See Gilbert v. California, *supra,* 388 U.S. at 272–273, 87 S.Ct. 1951. In such circumstances, the per se rule is not justified.

The proper test to be applied in such circumstances is the test announced in *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, namely, '[W]hether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' *Wade, supra,* 388 U.S. at 241, 87 S.Ct. at 1939.

As we have already set forth at length, this record clearly demonstrates that the in court identifications of all the witnesses were based upon personal observation where there was a clear and unmistakable opportunity to observe the physical characteristics of each of the assailants. As the record clearly does not support relator's position, we must reject his contentions concerning the identification issues he has raised in this petition.

Relator secondly contends that the prosecutor suppressed certain evidence. Suffice it to say that his contention is not only is unsupported by the State record, but is clearly refuted therein and we, therefore, give it no further consideration. Relator's petition for a writ of habeas corpus will be denied.