UNITED STATES of America ex rel.
Joseph HICKMAN, Petitioner,

v.

STATE OF NEW JERSEY, Respondent.

Civ. No. 1853–71.

United States District Court,
D. New Jersey.

April 17, 1972.

---

## OPINION AND ORDER

COHEN, District Judge:

Petitioner, Joseph Hickman, seeks a writ of habeas corpus pursuant to 28 U. S.C. § 2241 et seq. He is currently incarcerated in the New Jersey State Prison, where he is serving an aggregate sentence of thirty-seven to forty-three years [1] upon convictions for kidnapping (N.J.S.A. 2A:118–1); assault with a dangerous weapon (N.J.S.A. 2A:90–3); and larceny of an auto (N.J.S.A. 2A:119–2). Sentence was imposed on October 24, 1969, following conviction by jury in the Camden County Court.

On appeal, the Superior Court of New Jersey, Appellate Division, affirmed *per curiam*, State v. Hickman, No. A–544–69 (App.Div.1971). The Supreme Court of New Jersey denied certification, State v. Hickman, 59 N.J. 296, 281 A.2d 809 (1971).

After a thorough consideration of the state court proceedings, we find no need for an evidentiary hearing inasmuch as the record is factually complete regarding the issue raised by the petitioner. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The sole question presented here is whether the courtroom identification of

---

1. Petitioner was sentenced to a prison term of 35–40 years on the kidnapping charge; 5–7 years on the assault charge to run concurrently with the kidnapping sentence; and 2–3 years for the larceny of an auto conviction, to run concurrently with the kidnapping sentence but consecutively to the assault sentence.

the petitioner should have been excluded as the product of an unconstitutional pretrial photographic identification. Specifically, the petitioner claims that his sixth amendment right to counsel was infringed by the stationhouse photographic identification conducted in the absence of counsel. It should be noted that at this time the petitioner was unrepresented by counsel, either court-appointed or of his own choice. Counsel was subsequently appointed. In support of his contention, he cites a series of Supreme Court decisions holding that a right to counsel exists at post-indictment lineups.[2] Additionally, he relies on Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), to support his contention that the photographic identification procedure was "impermissibly suggestive."

In *Simmons,* the Supreme Court dictated the controlling standard of an in-court identification which was the product of a pretrial photographic identification. Speaking for the Court, Justice Harlan stated that

> each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so *impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.* (390 U.S. at 384, 88 S.Ct. at 971) (emphasis added).

In application of the above mandate, it is necessary to consider the circumstances surrounding the challenged photographic identification in the instant case.[3]

At trial, the State's principal witness was the alleged victim, Judith Ann Clark. She testified that on the morning of November 15, 1968, she parked her car at the Cherry Hill Mall, Cherry Hill, New Jersey. The witness further related that upon the completion of her shopping, she returned to her car, partially entered on the driver's side when "a man forced his way through the open door and forced me to the other side of the car" (T.15); "told me that he had been stabbed in the stomach [by a member of the Henchman Motorcycle Club] and had to get to a special doctor in Camden"; and "[t]hat he had wondered [sic] the night half conscious . . . [a]nd that he needed a ride" (T.16). Her abductor took her car keys. He had a hunting knife, with a six inch blade which he pushed into her side (T.17). He then drove her car to a back road and when he had to stop at a traffic light in Harrison Township, Camden County, she jumped out of the car and escaped. During the ride he held her hand, pinched her cheeks and rubbed her leg. Upon her escape, she immediately contacted her employer who, upon arrival, accompanied her to the police authorities both in Harrison Township and Cherry Hill to each of which she gave a complete description of her assailant, her car and the details of her harrowing experience. At this point in her testimony, when mention was made of the display of photographs to her by the police, defense counsel requested a side bar conference. The jury was excused and before any identification testimony was offered, the court very properly conducted an out-of-the-presence-of-the-jury hearing to determine the validity of the challenged photographic identification.

During this hearing the witness continued her testimony and indicated that she viewed some fifteen photographs at the Cherry Hill Police Station, but was unable to identify her abductor. She was immediately taken to the Collings-

---

2. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which de-

nied retroactive effect to both *Wade* and *Gilbert.*

3. Inasmuch as there was no testimony before this court, the factual account was gleaned from the trial transcript.

wood Police Station where some eight additional photographs were exhibited to her from which she identified the petitioner. Upon cross-examination, she stated that she picked out the petitioner's photograph from a book labeled "Moral Offenders," but was totally unaware of this title until after her identification was made. Her testimony of the identification procedure was corroborated by Detective Donald Elmer of the Cherry Hill Township Police Department, who further testified that while Miss Clark was viewing the photographs, one Linda Campiglia (an alleged kidnapping victim by someone on the previous day) was attempting to identify her abductor at the same time. Both women simultaneously identified the petitioner as their abductor. It was established that Miss Campiglia had earlier viewed about twenty photographs at the Cherry Hill Police Station without making an identification.

The Trial Judge determined that the photographic viewings were not "impermissibly suggestive," were untainted and conducted fairly and justly. He permitted the in-court and pretrial identifications to be testified to as part of the State's case. We agree with his determination.

■ In a trilogy of cases [4] dealing with lineups, the United States Supreme Court recognized that an accused has the right to have counsel present at a pretrial, post-indictment lineup. The Court grounded its decision on the principle that an accused is entitled, under the sixth amendment, to be represented by counsel at any "critical stage" of the criminal process. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967). "Critical stage" was defined by the Court as "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." Id. at 226, 87 S.Ct. at 1932. See also Coleman v. Alabama, 399 U.S. 1, 7, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969).

Our own Third Circuit Court of Appeals, in United States v. Zeiler, 427 F. 2d 1305 (3 Cir. 1970) [hereinafter cited as Zeiler I],[5] extended the Wade principle to pretrial photographic identification. Id. at 1307.[6] It should be noted, however, that in Zeiler I, the accused was already in custody at the time the police conducted the photographic identification. Consequently, since the investigation "focused" on a particular individual "in custody" it was clear that a critical stage of the proceedings had been reached. Cf. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. Illinois, 378 U. S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); and Nelson v. Peyton, 415 F.2d 1154 (4 Cir. 1969), cert. denied, Cox v. Nelson, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970). To the contrary, in the instant case, the photographic viewing occurred during the investigatory stage of the case, when the petitioner was not in custody. Therefore, this is not a case like Zeiler I, where the post-

---

4. See note 2 supra. See generally Comment, Lawyers and Lineups, 77 Yale L.J. 390 (1967).

5. See p. 355 infra for discussion of Zeiler II.

6. For an analysis of the Zeiler I decision see Note, Right to Counsel at Pretrial Photographic Identification, 2 Rutgers-Camden L.J. 347 (1970). See generally Comment, Criminal Procedure—Photo Identifications, 43 N.Y.U.L.Rev. 1019 (1968). It should be pointed out that a number of other circuits disagree with the Zeiler I holding. See, e. g., United States v. Long, 449 F.2d 288, 301–302 (8 Cir. 1971); United States v. Williams, 436 F.2d 1166, 1169 (9 Cir. 1970), cert. denied, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971); United States v. Bennett, 409 F.2d 888, 899–900 (2 Cir.), cert. denied, Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969); United States v. Marson, 408 F.2d 644, 649–651 (4 Cir. 1968) (dictum) cert. denied, 393 U.S. 1056, 89 S.Ct. 695, 21 L.Ed.2d 698 (1969); McGee v. United States, 402 F.2d 434 (10 Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969). Contra, United States v. Ash, 461 F.2d 92 (D.C. Cir. 1972) (en banc).

custody photographic identification could have easily been carried out in the presence of counsel. Clearly, when a suspect is still at large photographic identification is "not only mandatory but a matter of some urgency." United States v. Fowler, 439 F.2d 133, 134 (9 Cir. 1971).[7]

Moreover, a number of recent cases have properly refused to extend *Zeiler I* to the pre-custody stage. Simmons v. United States, *supra;* United States ex rel. Woods v. Rundle, 326 F.Supp. 592, 594 (E.D.Pa.1971); United States v. Sanders, 322 F.Supp. 947, 955 (E.D.Pa. 1971); and United States ex rel. Oliver v. Commonwealth, 321 F.Supp. 192, 193 (E.D.Pa.1970). This court is in complete agreement with these decisions holding that *Zeiler I* is inapplicable to pre-custodial photographic identification and that no right to counsel attaches at this preliminary stage of an investigation.[8] Accordingly, petitioner's contention that his sixth amendment rights were abridged when Miss Clark viewed photographs in the absence of his counsel is totally without merit.

■ Although it is clear from the above analysis that petitioner was not entitled to counsel at the photographic identification, it is incumbent upon this court to evaluate the "totality of the surrounding circumstances" to ascertain if the "procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, *supra*, 390 U.S. at 384, 88 S.Ct. at 971. Commentators have often voiced the fear that stationhouse photographic identification is susceptible to undue police suggestion. *See* Comment, Photographic Identification: The Hidden Persuader, 56 Iowa L.Rev. 408 (1970); Note, Right to Counsel at Pretrial Photographic Identification, 2 Rutgers-Camden L.J. 347, 350 & n. 25 (1970). *See generally* P. Wall, Eye-Witness Identification in Criminal Cases (1965). Moreover, the Supreme Court apparently formulated its "impermissibly suggestive" test in response to the inherent possibility of inaccuracy attendant to the identification of suspects by photograph. Simmons v. United States, *supra*, 390 U.S. at 383–384, 88 S.Ct. 967.

One way in which suggestibility may come into play is when the police tell a witness that he is viewing pictures of individuals who have been either arrested or convicted of crimes similar to the one charged. *See* P. Wall, *supra*, at 82–83. Although the facts of the case at bar indicate that Miss Clark viewed photographs from a blue looseleaf type notebook marked "Moral Offenders," she maintained that she was unaware of this title until after the identification was made. Therefore, no undue suggestion can be attributed to her identification from this factor.

Another danger of suggestibility arises when, as here, a witness is allowed to view mug shots in the presence of other witnesses. *See* P. Wall, *supra*, at 83. In this situation, there plainly is a risk that an uncertain witness may be persuaded to go along with a co-witness who is able to make a positive identification. This court fully recognizes that subtle psychological stimuli may come into play and taint the reliability of an identification when more than one wit-

---

7. In his separate opinion in United States v. Wade, 388 U.S. 218, 255, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Justice White aptly described the problem faced by police during the investigatory stages of a case. Justice White's remarks, although made in the context of a post-custody lineup, are even more significant in a pre-custody photographic identification context.

8. *Zeiler I* was denied retroactive effect in United States v. Higgins, 458 F.2d 461 (3 Cir. 1972). Accordingly, the instant case would not be governed by *Zeiler I* even if it was applicable. The pre-*Zeiler I* law of this circuit was expressed in United States v. Conway, 415 F.2d 158 (3 Cir. 1969), cert. denied, 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970), in which it was held that a preindictment photographic identification was not a "critical stage" of the prosecution to which the right to counsel attaches. *Id.* at 162.

ness is permitted to view a display of photographs. Although this procedure may pose a possibility of unfairness, we are satisfied that the identification under review was not so "impermissibly suggestive" as to run afoul of the test set out in *Simmons*. As one court aptly pointed out, the "impermissibly suggestive" standard is difficult to apply "because the articulation of the test describes a result but not how the result is reached." United States v. Cunningham, 423 F.2d 1269, 1272 (4 Cir. 1970). Notwithstanding the ambiguity of the *Simmons* test, the Court implicitly recognized certain guidelines for conducting a photographic identification. According to these standards police should not: 1) "display to the witness only the picture of a single individual who generally resembles the person he saw," or 2) "show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized," or 3) "indicate to the witness that they have other evidence that one of the persons pictured committed the crime." 390 U.S. at 383, 88 S.Ct. at 971.

The record indicates that none of these suggestive practices were utilized in the instant case. Additionally, it should be recalled that both witnesses previously viewed photographs at the Cherry Hill Police Headquarters without making an identification. This indicates that both exercised caution and care. Consequently, viewing the "totality of circumstances," we find that the identification procedure under review was not "impermissibly suggestive."

■ Despite our holding above, we recognize that dual identification raises the possibility of suggestion. Accordingly, it is incumbent on this court to ascertain if there was an "independent basis" for Miss Clark's in-court identification. In determining this question we are guided by the principle set out in

Wong Sun v. United States, 371 U.S. 471, 487–488, 83 S.Ct. 407, 417, 9 L.Ed. 2d 441 (1963). In that case the Supreme Court stated:

We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

Additionally, in United States v. Zeiler, 447 F.2d 993 (3 Cir. 1971) [hereinafter cited as *Zeiler II*], our own court of appeals recognized that

the witnesses' in-court identifications are admissible only if the Government establishes by clear and convincing evidence that they have an origin independent of any photographic identification made outside the presence of counsel. *Id.* at 995.

Thus, even when *Zeiler I* is violated, a court must determine whether an "independent basis" exists for an in-court identification.

Moreover, in *Zeiler II*, Chief Judge Seitz noted seven factors, enumerated by the Supreme Court in *Wade*,[9] to determine whether the in-court identification had an "independent basis." These factors are:

(1) the manner in which the pretrial identification was conducted; (2) the witnesses' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other

---

9. 388 U.S. at 241, 87 S.Ct. 1926. This court has cited the *Wade* criteria as articulated in *Zeiler II* because the latter case involved a pretrial photographic identification.

person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification. 447 F.2d at 995.

This Court has reviewed the instant case in light of these criteria and has determined that the findings of the Trial Judge clearly indicate that a sufficient "independent basis" existed for Miss Clark's in-court identification.[10] It appears quite evident that her *vis-à-vis* confrontation and ordeal with her assailant for more than an hour served as an "independent basis" for her in-court identification.

Finally, it must be recognized that the in-court identification was subject to cross-examination by petitioner's counsel. In refusing to prohibit the use of pretrial photographic identification in *Simmons*, Mr. Justice Harlan recognized the importance of cross-examination when he stated:

> Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. *The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error.* We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. (390 U.S. at 384, 88 S.Ct. at 971) (emphasis added).

Careful examination has been made of the entire record and we find no harm-

ful or prejudicial error substantially affecting the petitioner's rights. *See* Schneble v. Florida, 405 U.S. 427, 92 S. Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Accordingly, for all of the above reasons, petitioner's application for a writ of habeas corpus will be denied.

It is, therefore, on this 17th day of April, 1972 ordered that the petition of Joseph Hickman for a writ of habeas corpus be and the same is hereby denied.

It is hereby certified that no probable cause for appeal exists from this Order.

---

10. For a case in which the courtroom identification of the accused was impermissibly tainted and for which no "inde- pendent basis" was found, see United States ex rel. Woodard v. State, No. 71–1147 (3 Cir. Apr. 6, 1972).