Howard DENNY, Petitioner,

v.

Raymond W. ANDERSON, Warden, Delaware Correctional Center, Respondent.

No. 141.

United States District Court,
D. Delaware.

July 16, 1971.

Ciro C. Poppiti, Wilmington, Del., for petitioner.

Francis A. Reardon, James Erisman and Daniel A. Durkin, Deputy Attys. Gen., Wilmington, Del., for respondent.

## OPINION

STEEL, District Judge:

Howard W. Denny ("Denny"), a state prisoner, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was permitted to proceed in forma pauperis.

Denny was convicted by a jury in the Superior Court of Delaware of assault with intent to commit robbery and assault with intent to commit murder. He was sentenced to a term of twenty years on each charge, to run concurrently. His conviction was affirmed by the Supreme Court of Delaware. Denny v. State of Delaware, 277 A.2d 682 (Del.Supr.1971).

■ This Court's jurisdiction is founded upon 28 U.S.C. § 2241. The requisite exhaustion of state remedies required by 28 U.S.C. § 2254 has been shown. Application to the United States Supreme Court for writ of certiorari is unnecessary for complete exhaustion of state remedies. Fay v. Noia, 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Denny alleges that his conviction resulted from a violation of the Due Process and Equal Protection clause of the Fourteenth Amendment, and the Confrontation clause of the Sixth Amendment of the Constitution of the United States which is made applicable to the States by the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). More specifically he alleges that the in-court testimony of Kagel, the victim, identifying him should have been excluded because of prior out-of-court photographic identifications by Kagel without his (Denny's) attorney being present, and because of Kagel's identification of Denny at the "probable cause" hearing in the Municipal Court, after Denny had been pointed out by the police. As part of its case the state made no reference to any of these out-of-court identifications.

On June 9, 1971, the defendant, who as warden of the Delaware Correctional Center, had custody of Denny, was directed to show cause on or before the 18th of June 1971 why the writ should not be granted. An answer to the petition was filed by the defendant and a hearing was held on July 14th. The only evidence offered by either party was a transcript of the trial on June 23rd and 24th, 1970 in the Superior Court which resulted in Denny's conviction.

The "Statement of Facts" alleged in the petition reads in part:

On December 16, 1969, at approximately 4:30 p. m., two (2) young negro males entered Kagel's Paint Store at 28th and Northeast Boulevard; Wilmington, Delaware.

They asked for a can of turpentine. The proprietor, Kagel, placed the can of turpentine on the counter and the larger of the two males handed him a five (5) dollar bill.

Mr. Kagel proceeded to the cash register to ring up the sale and the two men followed him to the counter.

One of the men later identified as petitioner, Denny, allegedly stood in front of the proprietor; as Mr. Kagel was ringing up the sale, a shot rang out. He turned and saw another shot being fired.

Mr. Kagel suffered two wounds * * * one passing through his chest, the other passing through the back of his neck.

The two men attempted to rifle the cash register, which had fallen behind the counter; the cash register could not be opened. The victim crawled to

the front counter and sounded the alarm. He also dialed the operator for the police.

Officer's [sic] Edgar and Lutz, arrived on the scene, responding to a radio call logged at 4:45 p. m.

The two officers entered the front door of the store, and found Mr. Kagel wounded. Mr. Kagel was transferred to the "Delaware Division."

That night, while Kagel was in the hospital, he identified Denny (but not his alleged companion) from photographs which the police showed him.[1] At the time Denny had not been taken into custody. He was not represented by an attorney during this examination of the photographs. The photographic examination was made at an investigatory stage of the case.

Both in the Supreme Court of Delaware[2] and in his petition, Denny conceded that this identification procedure was not faulty in itself. He argues, however, that Kagel's photographic identification could have been suggestive and prejudicial, since, he argues, it can be safely assumed that Kagel was under heavy sedation.[3]

In speaking of a pre-arrest identification from photographs by witnesses who later made an in-court identification of a defendant, the court said in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968):

We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure

was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The evidence must be examined in the light of this test.

At the trial Kagel identified Denny as one of the two persons who walked into his store. He said he had a good look at Denny's face, and that when he showed the two cans of turpentine to Denny he was "four or five feet at most" away.[4] While Kagel stated that when the first shot was discharged he did not see specifically the faces of either Denny or his alleged companion, he testified that he had no doubt that Denny was one of the men in his store and that the shot which was fired came from the side of the cash register where Denny was standing.[5] He said that when the store was entered neither of the two men were wearing sunglasses, both were clean shaven, and both had just normal hair.[6] He testified further that the shorter of the two (not Denny) had an earring in one ear.

The photographic identification took place within hours after the crime had been committed, and at the time Kagel had an excellent opportunity to observe Denny. The procedure which was followed at the hospital was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The fact that it took place does not justify setting aside the conviction based as it was on the in-court identification testimony of Kagel.

The next time that Kagel identified Denny was in the Municipal Court in February or March of 1970 at the "probable cause" hearing to determine whether Denny should be held over for the Superior Court. This was three or four months after the shooting.

1. Record at 36.

2. Page 5 of Appellant's Opening Brief dated March 9, 1971.

3. There is no evidence to support this assumption. Kagel's perceptive ability or the state of his consciousness when he examined the photographs was not the subject of any evidence.

4. Record at 27.

5. Record at 29.

6. Record at 33–34.

What took place in the Municipal Court was the subject of voir dire testimony by Officer Friedman and Kagel adduced by Denny. From this it appears that Kagel went to the Municipal Court with his wife and sat in the "gallery" until he was called to testify. He had met with no police officers before testifying nor had he been shown any photograph of Denny since he had been in the hospital. Kagel recognized Denny when he saw him sitting with his attorney in the court room. This was before his (Denny's) name was called out when his case was reached. Kagel took the witness stand and identified Denny. Whether or not Denny's attorney cross-examined Kagel is not shown by the record. Kagel had not been advised of Denny's name when he identified him from photographs in the hospital.[7]

It is not important to determine whether, as Denny contends, Kagel's testimony in the Municipal Court constituted an "out-of-court" identification merely because it was not an identification during the trial itself. Even if Kagel's Municipal Court testimony is construed to have been "out-of-court", nevertheless defendant was represented by an attorney at the time when the identification was made. The fact this identification was made "out-of-court", if it was, is not in itself sufficient to render incompetent Kagel's identification of Denny at the trial.

Nonetheless, Denny argues that the Municipal Court identification was highly suggestive and influenced Kagel's identification testimony at the trial because when Denny's name was called in opening the probable cause hearing, the effect was virtually to identify Denny for Kagel as the person whom the state was charging with the crime. This alleged vice in the Municipal Court procedure, Denny now contends, could have been avoided by the Municipal Court requiring a "lineup" type of identification, or some other procedure which would have been more protective of Denny's rights than that which occurred. So far as the record discloses the attorney for Denny made no effort to persuade the Municipal Court to follow an identification procedure more conducive to safeguarding his rights. The purpose of providing an accused with an attorney is to insure that his interests will be adequately protected at every stage of a criminal proceeding. It is because of this that the courts have condemned "in custody" lineup and photographic identifications which occur without an attorney for a defendant being present. Being represented by an attorney, as he was, Denny is in no position to challenge successfully the Municipal Court identification.

■ Some time after the Municipal Court hearing Kagel again was shown several photographs from which he identified Denny.[8] Although Denny was then in custody and represented by an attorney, the latter was not present when Kagel made this photographic identification. For this additional reason Denny asserts that Kagel was incompetent to identify him at the trial and his conviction must therefore be set aside.

To support this argument Denny relies primarily upon United States v. Zeiler, 427 F.2d 1305 (3d Cir. 1970) and United States of America ex rel. Reed v. Anderson, 329 F.Supp. 15 (D.Del. July 9, 1971 (Latchum, J.). In Zeiler the court stated (427 F.2d at 1307) that it would apply to pretrial photographic identifications of an accused who was in custody and unrepresented by an attorney the rule enunciated in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The Wade case dealt with the effect upon an in-court identification of an accused by an eye witness to the crime when the witness had identified the accused at a pretrial lineup while the accused was in custody and unrepresented by an attorney.[9] The Supreme Court held that the judgment of conviction should be vacated and the case re-

7. Record 49–51.

8. Record at 51–52.

9. As in the case at bar, the state had not placed the pretrial identification in evidence at the trial. Rather this fact was developed by defendant.

manded to the District Court so as to afford the government an opportunity "to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." 388 U.S. at 240, 87 S.Ct. at 1939. The Court said:

> On the record now before us we cannot make the determination whether the in-court identifications had an independent origin. * * * We therefore think the appropriate procedure to be followed is to vacate the conviction pending a hearing to determine whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence is harmless error * * *. 388 U.S. at 242, 87 S.Ct. at 1940. (citations omitted)

The Court also said:

> Where, as here, the admissibility of evidence of the lineup identification itself is not involved, a *per se* rule of exclusion of courtroom identification would be unjustified. 388 U.S. at 240, 87 S.Ct. at 1939.

In applying the rule of *Wade* to a pretrial photographic identification, *Zeiler* paraphrased *Wade* and said:

> In order for such in-court identifications to be admissible the government must establish by clear and convincing evidence that the witnesses were not influenced by the prior improper photographic confrontations. 427 F.2d at 1308.

and that the government had a

> heavy burden of proving that the witness was not influenced and thus made incompetent for subsequent in-court identification. 427 F.2d at 1309.

In the case at bar no finding was made by either the trial court or the Supreme Court of Delaware [10] such as the *Zeiler* principle demanded as a condition to Kagel's identification of Denny at the trial. The record, however, enables this Court to do so.

Prior to Kagel's identification of Denny from photographs after the Municipal Court hearing, he had twice before identified him under circumstances which involved no illegality, constitutional or otherwise. Reference is made to the photographic identification when Kagel was in the hospital, and to Kagel's identification in Municipal Court. By these actions Kagel twice committed himself to Denny's identity.

Once a witness has identified an accused, it is extremely unlikely that he will change his mind. Cf. United States v. Zeiler, 427 F.2d at 1306–1307. This is particularly so in the instant case where twice Kagel identified Denny prior to his last photographic identification. In the circumstances, the likelihood that suggestive influence was brought to bear upon Kagel's trial testimony by reason of his last pretrial photographic identification is so remote as to be negligible. This is especially true when consideration is given to the evidence, previously discussed, of the opportunity which Kagel had to view defendant Denny at close range when the crime was committed. The Court finds that the state has established by clear and convincing evidence that Kagel in identifying defendant at the trial *was not influenced by his last photographic identification*.

Stated in the words of the Supreme Court in *Wade*, the Court is satisfied that the state has established by clear and convincing evidence that the in-court

---

10. Denny made no claim in the trial court that the pretrial identifications by Kagel of Denny required a suppression of his "in-court" identification. The only motion defendant made was "to suppress the evidence of the photographic identification" (R. 53). This motion was denied without any reason being stated (R. 53). The only evidence of a photographic identification which was before the jury when the motion was made was that developed by the defendant on cross-examination of Kagel (R. 36–37). Other facts pertaining to pretrial identifications had been adduced by defendant on voir dire out of the presence of the jury (R. 42–52). No evidence of pretrial identifications was offered by the state either before or after the motion.

identification by Kagel was not based upon his last photographic identification but had an independent origin, viz., Kagel's observation of Denny at the time when the crime was committed, his identification of Denny through photographs exhibited in the hospital, and finally by his physical identification of Denny in the Municipal Court.

In United States of America ex rel. Reed v. Anderson, 329 F.Supp. 15 (D. Del. July 9, 1971) the habeas corpus petition was granted and the conviction and sentence were set aside. That decision is not at variance with the views expressed in this opinion. In *Reed*, unlike the situation at bar, the details of the out-of-court identification of the accused were presented by the state as part of its case and were admitted in evidence before the jury. The usage by the government of similar evidence was held to constitute constitutional error in *Zeiler*, 427 F.2d at 1307.

Although Denny denied that he was the person who had committed the crime and the only evidence to the contrary was Kagel's testimony, the conviction of Denny involved no violation of his claimed constitutional rights.

The petition will be denied.