COMMONWEALTH *vs.* JOSEPH L. ROBERTS.

Suffolk. November 1, 1971. — July 20, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Practice, Civil,* Delinquency proceeding, Disclosure of evidence, Assistance of counsel. *Delinquent Child. Constitutional Law,* Due process of law, Assistance of counsel. *Identification. Robbery. Assault. Boston Juvenile Court. Practice, Criminal,* Waiver. *Supreme Judicial Court,* Argument. *Waiver.*

Nondisclosure by the prosecutor prior to a Juvenile Court hearing on a delinquency complaint that two eyewitnesses had failed to identify a photograph of the defendant did not constitute a denial of due process of law under the Fourteenth Amendment to the United States Constitution, even assuming *Brady* v. *Maryland,* 373 U. S. 83, applied to the hearing, where evidence was lacking of a request

for such information by the defendant and of a deliberate withholding thereof, and three other eyewitnesses as well as the first two identified the defendant at the hearing. [360–363]

At the trial of an indictment for armed robbery in a bakery, there was no error in the admission of in-court identifications of the defendant by two salesgirls on duty who "had ample and adequate opportunity to observe" the defendant during the crime, notwithstanding their failure to select his picture later from numerous photographs, and notwithstanding their identification of the defendant in a detention cell "showup" at a Juvenile Court, evidence of which was excluded by the trial judge. [363–365]

Warranted findings by the judge at the trial of indictments that the pre-trial photographic identification procedure used by police with two witnesses was proper justified conclusions that their in-court identifications of the defendant were not "tainted" by such procedure and were properly admitted in evidence. [365–366]

Where the judge at the trial of an indictment for armed robbery did not find to be "impermissibly suggestive" the pre-trial photographic identification procedure used by police with the wounded victim, who had observed the defendant for only two or three seconds, there was no error in admitting the victim's in-court identification testimony. [365–367]

The constitutional rights of a defendant charged with crime were not violated by the showing of a photograph of him to witnesses by police when the defendant's counsel was not present. [367]

Evidence at the trial of indictments for armed robbery and assault and battery in a bakery warranted verdicts of guilty against the defendant, one of two boys who participated in the crimes. [368]

No constitutional rights of a juvenile against whom a delinquency complaint was brought were violated by the failure of the Boston Juvenile Court to make a record of the hearing under G. L. c. 119, § 61, as amended through St. 1964, c. 308, § 2, or by the failure of the judge thereof to file a written statement of his findings and reasons for dismissing the complaint and binding the defendant over for trial in the Superior Court as an adult. [368–369]

An assertion in an assignment of error in a criminal case of constitutional error, without argument or citation of authority in support thereof by the defendant, was treated by this court as waived. [369–370]

TWO INDICTMENTS found and returned in the Superior Court on October 6, 1970.

A motion to suppress was heard by *Rose*, J., and the cases were tried before him.

*Whitney L. Scott* for the defendant.

*William J. Doyle*, Assistant District Attorney, for the Commonwealth.

QUIRICO, J. These are appeals from a trial under G. L. c. 278, §§ 33A–33G, as amended, at which the de-

fendant, then a person under seventeen years of age, was found guilty by a jury on indictments charging him with (1) armed robbery and (2) assault and battery by means of a dangerous weapon. The defendant assigns various errors as grounds for these appeals, including: (a) the denial of his motion to quash the indictments on the ground that the police prosecutor at a juvenile hearing suppressed certain evidence; (b) the denial of his pretrial motion to suppress certain in-court identifications; (c) the denial of his motion for directed verdicts on the indictments; and (d) the denial of his motion to set aside the verdicts and dismiss the indictments. Portions of the evidence and certain facts found by the trial judge in ruling on the defendant's motion to suppress will be set forth as necessary in deciding the issues raised.

At approximately 4 P.M. on July 23, 1970, two boys, one of whom was armed with a pistol, robbed the Mission Hill Food Shop, a bakery in Roxbury. In the course of the robbery one of the two boys shot and wounded William Baker, a co-owner of the shop.

The defendant was later charged with participating in the robbery and shooting, and his case was heard in the Boston Juvenile Court on September 15, 1970. Prior to, and at that hearing, the defendant was represented by appointed counsel. At the hearing each of five witnesses, more fully described later in this opinion, identified the defendant as one of the two boys who robbed the bakery.

At the conclusion of the hearing, the judge acting under G. L. c. 119, § 61, dismissed the juvenile complaint and ordered the defendant bound over for trial in the Superior Court as an adult. G. L. c. 119, § 75. Thereafter, during the trial in the Superior Court, three witnesses identified the defendant as the taller of the two boys who robbed the bakery, and two other witnesses testified that they saw the defendant fleeing from the shop on that day. The jury returned verdicts of guilty on both indictments. The various assignments of error which comprise the basis of his appeals will be considered separately.

### A. The Denial of the Motion to Quash the Indictment.

The defendant's first assignment of error relates to the denial of his "Motion to Quash Indictment,"[1] which was based upon the alleged failure of the police prosecutor to disclose to the defendant's counsel at the juvenile hearing the fact that on the evening of the robbery Miss Burke and Miss Bates, the two salesgirls on duty at the bakery at the time of the robbery, had failed to recognize the defendant's photograph and had selected the photographs of two other boys as looking "like" the robbers.

The Superior Court judge made no findings of fact in connection with his denial of the defendant's motion to quash. Thus, there was no express finding that, in fact, this information had not been disclosed to the defendant's counsel at the juvenile hearing, but the Commonwealth's brief argues on the basis that this information was first revealed to the defendant's counsel at the voir dire hearing prior to the trial in the Superior Court. Since the Commonwealth has argued on this basis, we accept as a fact that the defendant's counsel at the juvenile hearing did not have this information.

The facts surrounding this indictment appear in the later findings by the judge in ruling on the defendant's motion to suppress evidence. At approximately 7:30 P.M. on the evening of the robbery the police had gone to the home of Miss Bates, where Miss Burke was also present. Both girls were shown three to four pictures while they were standing together. The defendant's photograph

---

[1] While the "motion to quash" an indictment was technically abolished as a procedural device in this Commonwealth, along with a number of other criminal pleadings, in 1965 (St. 1965, c. 617, § 1), the abolishing act specifically preserved the prior statutory and common law applicable to such pleadings. St. 1965, c. 617, § 2. Since under the common law "the substance and not the name of a pleading controls," *Commonwealth* v. *Geagan*, 339 Mass. 487, 495, and cases cited, cert. den. sub nom. *Geagan* v. *Massachusetts*, 361 U. S. 895, we treat this aspect of the case as an appeal from the denial of a motion to dismiss the indictment under G. L. c. 277, § 47A, as amended by St. 1965, c. 756, § 1.

was among the group. They could not identify any of the photographs as depicting the perpetrators of the robbery and shooting and rejected the defendant's photograph because the face was "too full" or "too fat." They had indicated earlier that the taller boy had a thin face. After viewing the pictures at the Bates home, the girls were taken to police headquarters, where they viewed about 200 pictures. They selected two pictures which "looked like they were the two boys." Neither picture was of the defendant.

The defendant claims that the failure to disclose this information to his counsel constituted the suppression of evidence which, he asserts in his brief, "was material to the decision of the Juvenile Court judge to dismiss the delinquent child proceedings and order the issuance of a criminal complaint." He contends that the nondisclosure of this information denied him due process of law under the Fourteenth Amendment to the United States Constitution,[2] citing *Brady* v. *Maryland,* 373 U. S. 83, and subsequent Federal court decisions.

The Commonwealth, however, makes the threshold argument that the due process standards enunciated in *Brady* v. *Maryland, supra,* and its progeny, do not apply here because the question of guilt or innocence is immaterial to a juvenile hearing which results only in a decision to dismiss the juvenile complaint and order the issuance of a criminal complaint under G. L. c. 119, § 75, as amended through St. 1964, c. 308, § 7. The Commonwealth contends that the purpose of such a hearing is "merely to decide whether [to try] the defendant . . . as a delinquent child or as a criminal offender."

---

[2] The defendant also asserts in his brief that the non-disclosure of this information violated the Sixth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment. In addition, at this point, and at several other points in his brief, the defendant claims violations of art. 12 of the Declaration of Rights of the Massachusetts Constitution. Other than the bare statement of these claims, the defendant makes no further argument or elaboration upon them. In all instances this opinion considers only the specific grounds upon which the defendant's claims have been argued. See *Commonwealth* v. *Martin,* 358 Mass. 282, 290; *Roberts* v. *State Tax Commn.,* 360 Mass. 724, 728, n. 4.

Assuming, without deciding, that *Brady* v. *Maryland,* *supra,* and subsequent decisions regarding the due process aspects of suppression of evidence by the prosecution do apply to juvenile hearings such as the one involved here, nondisclosure of the information in question did not, on the facts of this case, constitute a denial of due process of law.

It should be noted at the outset that with respect to this information, there was no evidence of a "deliberate refusal to disclose after a request, nor . . . [of] a deliberate suppression of evidence indicating a clear intention on the part of the prosecution to withhold from the defendant knowledge of its existence." [3] *Commonwealth* v. *Earl, ante,* 11, 15, and cases cited. *United States* v. *Keogh,* 391 F. 2d 138, 146–147 (2d Cir.). See *Brady* v. *Maryland,* 373 U. S. 83, 87. Consequently, this case falls into the "category of cases . . . where the suppression was not deliberate . . . and no request was made, but where hindsight discloses that the defense could have put the evidence to not insignificant use." *United States* v. *Keogh, supra,* at 147. In such cases "the problems of the courts and the wider interests of society unite to require a substantially higher probability that disclosure of the evidence to the defense would have altered the result." *United States* v. *Keogh, supra,* at 148. See *Commonwealth* v. *Earl, ante,* at 15, 16.

Applying the preceding principle to this case, in light of the fact that three other eyewitnesses also identified the defendant at the juvenile hearing (see *Clemons* v. *United States,* 408 F. 2d 1230, 1250 (D. C. Cir.), cert. den. 394 U. S. 964; *United States* v. *DeLeo,* 422 F. 2d 487, 490 (1st Cir.), cert. den. sub nom. *DeLeo* v. *United*

---

[3] It may be significant in this connection that the "prosecutor" at the juvenile hearing was a police officer and not an attorney schooled in the law. Lacking a lawyer's training it is likely that he failed "to appreciate the use to which the defense could place [the] evidence" (*United States* v. *Keogh,* 391 F. 2d 138, 148 [2d Cir.]; see *Commonwealth* v. *Earl, ante* 15) and assumed that it was of no consequence once the two girls and three other witnesses had identified the defendant in person.

*States*, 397 U. S. 1037), we are convinced, beyond a reasonable doubt (see *Chapman* v. *California*, 386 U. S. 18, 24), that there was not "a substantially higher probability" that disclosure of this information to defence counsel at the juvenile hearing would have altered the result of that hearing. Accordingly, we hold that nondisclosure of the information in question, in the circumstances presented here, did not deprive the defendant of due process of law at the juvenile hearing, and that therefore there was no error in the denial of the defendant's motion to quash the indictments.

### B. The Denial of the Motion to Suppress the In-Court Identifications.

Prior to the trial in the Superior Court, the defendant filed a motion to suppress all evidence of identifications of him (1) from photographs, (2) at a "showup" during which two salesgirls on duty in the bakery at the time of the robbery observed him in a detention cell shortly before the hearing in Juvenile Court, (3) at the juvenile hearing, and (4) at the trial in the Superior Court. Following a voir dire hearing the judge suppressed all evidence of the identification at the detention cell "showup," but denied the motion to suppress in all other respects, and filed written "Findings of Fact and Conclusions of Law on Defendant's Motion to Suppress." The defendant duly excepted thereto. For convenience we discuss the defendant's contentions with reference to the various witnesses to which they apply.

1. *The in-court identifications by Miss Bates and Miss Burke.* By his second and third assignments of error the defendant contends that the in-court identifications by Miss Bates and Miss Burke, the two salesgirls on duty at the bakery during the robbery, should have been suppressed on the ground that they were "tainted" by their confrontation of him while he was confined in the detention cell at the Juvenile Court. The defendant argues that the admission in evidence of their in-court identi-

fications violated the due process clause of the Fourteenth Amendment to the Constitution of the United States.

At the voir dire hearing on the motion to suppress there was considerable evidence of the circumstances surrounding this confrontation, of the girls' prior opportunity to observe the perpetrators during the robbery itself and much evidence, which we have already summarized, concerning the girls' inability to select the defendant's photograph from numerous photographs shown to them shortly after the robbery. After reviewing this evidence the judge suppressed any evidence of the identification of the defendant by the two girls while he was in the detention cell, on the grounds that this identification "was made under impermissibly suggestive circumstances and did not permit a freedom of choice on their part." The judge further found, however, that "the witnesses, Miss Bates [and] Miss Burke, . . . had ample and adequate opportunity to observe the taller of the two youths at the time of the holdup and shooting in the store and that *their in-court identification of the defendant is proper and free of outside suggestion or influence.* I make this finding and ruling with respect to the identification by Miss Burke and Miss Bates notwithstanding their failure to select his picture later that evening as the taller of the two participants of the crime" (emphasis added).

The question whether the girls' in-court identifications of the defendant had an independent source free of outside suggestion or influence was one of fact for the trial judge to decide. The judge's findings resolved this question of fact against the defendant, and we do not substitute our judgment for his thereon. The substantial quantity of evidence received at the hearing touched upon all of the factors which, under *United States* v. *Wade,* 388 U. S. 218, 241, are required to be considered in making this decision. See *Commonwealth* v. *McGrath,* 361 Mass. 431, 436–437; *Cooper* v. *Picard,* 428 F. 2d 1351, 1354 (1st Cir.) ; *S. C.,* on remand, 316 F. Supp. 856, 859–860, 862 (D. Mass.) ; *Allen* v. *Moore,* 453 F. 2d 970, 975 (1st Cir.). There was no error in the admission of the

disputed in-court identifications by the two salesgirls.

2. *The in-court identifications by Joseph, Barbara and William Baker.* By his fourth and fifth assignments of error the defendant contends that the trial judge erred in refusing to suppress the in-court identifications of him by three other witnesses. Two of these witnesses, Joseph and Barbara Baker, testified that the defendant was one of two boys they saw running from the bakery on the day of the robbery. William Baker, the shooting victim (who is not related to Joseph and Barbara), testified that the defendant was the boy who shot him.

On the evening of the robbery, Joseph and Barbara Baker selected the defendant's photograph from a group of 200 to 300 photographs shown to them by the police. They were in the same room with each other, side by side, but examining different racks of photographs. Subsequently, the police came to their home and showed them more photographs, not exceeding ten in number, and again they selected the photograph of the defendant.

That same evening, about midnight, the police went to Peter Bent Brigham Hospital where William Baker, the shooting victim, was confined and showed him ten pictures. He selected the first one of the group, that of the defendant, as the person who shot him. Prior to showing him the pictures, the police officer "riffled" them "like a deck of cards."

As to each of these witnesses the defendant first claims that their in-court identifications were "tainted" by pretrial photographic identification procedures which were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," *Simmons* v. *United States*, 390 U. S. 377, 384, and that their admission violated the due process clause of the Fourteenth Amendment to the United States Constitution.

Several decisions, including *Simmons* itself, have held that there is no per se rule prohibiting the use of photographic identifications in the course of police investigations while the perpetrators remain at large. See *Simmons* v. *United States, supra,* 384–385; *Cooper* v. *Picard,*

428 F. 2d 1351, 1352 (1st Cir.); *United States* v. *Canty,*
430 F. 2d 1332 (4th Cir.) and cases cited; *United States*
v. *Fowler,* 439 F. 2d 133, 134 (9th Cir.), and that "each
case must be considered on its own facts." *Simmons* v.
*United States, supra,* 384.

With respect to the identifications by Joseph and Bar-
bara Baker, the trial judge found that their "in-court
identification and their selection of the defendant's photo-
graph are a proper and valid identification." The photo-
graphic identification procedure in question was strik-
ingly parallel to the procedures approved in *Clemons* v.
*United States,* 408 F. 2d 1230 (D. C. Cir.), and *United
States* v. *Fitzpatrick,* 437 F. 2d 19, 26 (2d Cir.). Since
the photographic identification procedure was warrant-
ably found by the judge to have been proper, no prelim-
inary "taint" attached to these in-court identifications
and they were properly admitted.

With respect to the identification by William Baker,
the trial judge expressly found that "the selection by Wil-
liam H. Baker of the photograph of the defendant was
made by him at a time when he was lucid and clear of
mind in spite of the wound he had sustained." Ulti-
mately, the judge ruled that "William Baker had ample
and adequate opportunity to observe the taller of the two
youths at the time of the holdup and shooting in the store
and . . . [his] in-court identification of the defendant is
proper and free of outside suggestion or influence."
Since the photographic identification procedure was not
found to be "impermissibly suggestive," there was no
error in admitting William Baker's later in-court iden-
tification.

Although William Baker observed his assailant for
only a period of two to three seconds he testified that the
face of his attacker was "imprinted on my mind when I
saw him for the few seconds that I did see him," and
he gave a detailed description of his assailant. We have
previously held, in *Commonwealth* v. *Geraway,* 355 Mass.
433, cert. den. sub nom. *Geraway* v. *Massachusetts,* 396
U. S. 911, that it was not error to admit an in-court iden-

tification by a witness who had observed the face of the accused for only a few seconds and who had been shown photographs of the accused by the police in the course of their investigation. In that case we said (at p. 440) that, "[t]o the extent that the testimony may have had infirmities, that was a matter of the weight to be given to the testimony by the jury." So, too, the short period during which William Baker observed his assailant goes to the weight and not to the admissibility of his testimony.

Alternatively the defendant argues that showing his photograph to these witnesses without his counsel being present violated the Sixth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, under the rule of *United States* v. *Wade, supra.* In support of this contention the defendant cites *United States* v. *Zeiler*, 427 F. 2d 1305 (3d Cir.). However, in the recent decision of *Reed* v. *Anderson*, 461 F. 2d 739 (3d Cir.), the Third Circuit Court of Appeals, sitting en banc, expressly overruled (at p. 745) "that portion of *Zeiler* which denominated a pre-trial photographic identification as a critical stage requiring the presence of counsel to satisfy the Sixth Amendment." In addition, this court recently rejected the rationale of the *Zeiler* case as has virtually every Federal Court of Appeals which had considered the issue.[4] See *Commonwealth* v. *Ross*, 361 Mass. 665, 672–675, and n. 3. We therefore hold that counsel for the defendant was not required to be present when the photographs were shown to these witnesses.

Finally, the defendant argues that the in-court identifications by Joseph, Barbara and William Baker should have been suppressed as being derivatively "tainted" by their exposure to the testimony of Miss

---

[4] This issue is now pending before the United States Supreme Court. See *United States* v. *Ash*, 461 F. 2d 92 (D.C. Cir.), cert. granted, 407 U. S. 909. [REPORTERS NOTE. On June 21, 1973, the United States Supreme Court held that the Sixth Amendment does not grant an accused the right to have counsel present when photographs are shown to witnesses for identification. *United States* v. *Ash*, 413 U. S. 300.]

Burke and Miss Bates at the juvenile hearing. This argument is predicated upon the assumption that their testimony at that hearing was tainted as a result of their pre-hearing confrontation with the defendant at the Boston Juvenile Court detention cell. Since we have already upheld the trial judge's finding that their testimony was not so tainted, the defendant's contentions in this respect must fail.

### C.  THE DENIAL OF THE MOTION FOR DIRECTED VERDICTS.

The defendant's sixth assignment of error, contending that the trial judge erred in denying his motion for directed verdicts, must also fail inasmuch as it is predicated upon the assumption that some, or all, of the in-court identifications by the five witnesses discussed above should have been suppressed. We have ruled that all of these in-court identifications were properly admitted, and we hold further that the evidence taken as a whole was amply sufficient to support the verdicts of guilty. It follows, therefore, that it was not error for the trial judge to deny the motion for directed verdicts.

### D.  THE DENIAL OF THE MOTION TO SET ASIDE THE VERDICTS AND DISMISS THE INDICTMENTS.

By his seventh assignment of error the defendant contends that the trial judge erred in denying his motion to set aside the verdicts and dismiss the indictments, based upon alleged denial of due process because of the failure of the Boston Juvenile Court to make a record of his juvenile hearing and the failure of the judge of that court to file a written statement of findings and reasons for dismissing the juvenile complaint under G. L. c. 119, § 61, as amended through St. 1964, c. 308, § 2. In support of this proposition he cites *Commonwealth* v. *Brandano,* 359 Mass. 332, 337, *Kent* v. *United*

*States,* 383 U. S. 541, 557, 561, and *In re Gault,* 387 U. S. 1, 58. This court has previously made it clear that "[w]e do not read the *Kent* case as laying down a constitutional requirement," *Commonwealth* v. *Martin,* 355 Mass. 296, 301, a view expressly confirmed in the *Gault* case. *In re Gault, supra,* at 12. In addition, we have recently held that there is no constitutional right to a record of District Court proceedings. *Commonwealth* v. *Britt, ante,* 325. This principle applies equally to juvenile proceedings. Accordingly, we hold that no constitutional rights of the defendant were violated by the failure of the Boston Juvenile Court to make a record of his juvenile hearing or by the failure of the Boston Juvenile Court judge to file a written statement of his findings and reasons for dismissing the juvenile complaint.

The defendant also asserts in his seventh assignment of error that the failure of the Boston Juvenile Court to adopt Rule 85 of the Rules of the District Courts, requiring written findings in all juvenile cases, "denied [the defendant] equal protection of the laws." He offers no argument and cites no authority in support of this assertion. Such an assertion amounts to no more than a "capsule type" summary of an argument, and as we said in *Commonwealth* v. *Martin,* 358 Mass. 282-290, "This capsule type of reference to an issue . . . is no substitute for argument, and warrants our treating the issue as waived for failure to argue it." S. J. C. Rule 1:13, 351 Mass. 738.

In response to the defendant's apparent suggestion (in his reply brief) that there is an exception to S. J. C. Rule 1:13 with respect to arguments "based on constitutional considerations," it is sufficient to point out that the *Martin* case involved such an argument and no such exception was recognized there. For the foregoing reasons it was not error for the trial judge to deny the defendant's motion to set aside the verdicts and dismiss the indictments.

The additional points argued in the defendant's brief

which have not been discussed above have nonetheless been considered and it is our decision that they disclose no error.

*Judgments affirmed.*