## Commonwealth *v.* Barksdale, Appellant.

Argued November 23, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Frank J. Shields,* with him *John T. Grigby, III,* for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Stephen J. Margolin* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 18, 1971:

Appellant was convicted of first-degree murder and aggravated robbery by a jury on March 7, 1969. A sentence of life imprisonment was imposed. The murder for which appellant was convicted occurred during the

robbery of a check-cashing agency and novelty store committed by two men, aided by a woman driving a getaway car. Two eyewitnesses to the robbery in the store identified William Smith as one of the two robbers but could not identify the other man. Other witnesses identified the getaway car as a black Oldsmobile and one was able to jot down the last three digits of the license number. A number of police officers became involved in the highspeed chase of a black Oldsmobile with a license number with the identified three digits. When the car was forced to a stop, Smith, who had been shot, was captured. The other man fled on foot. The two officers who gave chase definitely identified the appellant as being one of the men in the automobile and as being the same man whom one of the officers finally caught.

Among the many witnesses who testified for the Commonwealth at the appellant's trial was Loretta Johnson, who admitted that she drove the getaway car for Smith and the appellant, who committed the robbery. Appellant's only contention in his appeal concerns what he alleges to be perjury by Loretta Johnson. When Miss Johnson was on the stand, the following cross-examination took place: "Q. Did anyone make any promises to you? A. No. Q. No promises at all? A. No. Q. No one told you that they could do something for you and get some leniency or anything as a result of your giving a statement? A. No. Q. Did any district attorney make any promise with you? A. No. Q. You are doing this of your own free will? A. Yes. Q. And you took part in, you are saying now, three robberies, and you are coming forth today and you are saying this of your own free will without anyone making any promises to you? A. Yes."

Loretta Johnson later pleaded guilty to second-degree murder and was sentenced to less than the maxi-

mum allowable sentence. Although there is no other evidence of any deal being made on Loretta Johnson's behalf, appellant contends that the fact of her more lenient sentence indicates that she might have been committing perjury on the stand. Appellant then argues that if she were promised leniency, the district attorney's office would have had to know of her perjury and, therefore, appellant's conviction would have to be reversed because it was obtained through the Commonwealth's knowing use of false evidence.

In making this argument, appellant relies on *Napue v. Illinois*, 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959). In *Napue,* a key prosecution witness named Hamer, on cross- and redirect examination, denied that any promise had been made to him in return for his testimony against a codefendant. After the trial, the prosecuting attorney himself filed a petition on behalf of Hamer alleging that as a prosecuting attorney he had promised Hamer that he would recommend a reduction in Hamer's sentence if Hamer testified against Napue. The petition prayed that the court would effect "consummation of the compact entered into between the duly authorized representatives of the State of Illinois and George Hamer." The United States Supreme Court reversed Napue's conviction because of Illinois' knowing use of Hamer's false testimony that no promise had been made to him.

Appellant's case can easily be distinguished from *Napue* because here there is no clear proof that the prosecutor's office made any deal with the witness. Appellant admits this, but contends that the fact of Loretta Johnson's more lenient sentence alone entitles him to a separate hearing on this question.

We do not agree. The fact that Miss Johnson received a more lenient sentence than the appellant or Smith in no way proves she was promised anything for

her testimony. For one thing, as the driver of the get-away car, she played a lesser role in the crime, a fact which might indicate she was less dangerous and which could properly lead to a more merciful punishment despite her complicity in the felony-murder. See discussion of the fact finder's discretion in choosing among various degrees of homicide in *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A. 2d 726 (1970). In addition, it is far from unusual for a felon who testifies against a codefendant to receive less severe treatment from the district attorney and the court even though no specific promises are made.[1] There is absolutely no indication that promises were made. At oral argument on appellant's motion for a new trial, the district attorney who tried the case denied any arrangement had been made with the witness prior to her testimony. Miss Johnson has apparently denied on three separate occasions that any special promises were made to her: at appellant's trial, at Smith's trial, and at her own hearing. Appellant's counsel had ample opportunity to cross-examine Miss Johnson during the trial as to her motives in testifying. Consequently, we can see no further purpose to be served by a special hearing on this issue.

Judgment of sentence affirmed.

Mr. Justice COHEN took no part in the decision of this case.

---

[1] See American Bar Association Standards Relating to Pleas of Guilty, §1.8: "(a) It is proper for the court to grant charge and sentence concessions to defendants who enter a plea of guilty or nolo contendere when the interest of the public in the effective administration of criminal justice would thereby be served. Among the considerations which are appropriate in determining the question are: . . . (v) that the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct."