Commonwealth *v.* Smith, Appellant.

2

Argued November 15, 1971; reargued November 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Martin A. Heckscher*, with him *Duane, Morris & Heckscher*, for appellant.

*James D. Crawford*, Deputy District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 4, 1973:

On March 21, 1968, at 1:45 p.m., a check-cashing agency in Philadelphia was robbed by two men, and

4

the proprietor, Charles Ticktin, was killed. An estimated $1500 was stolen in the robbery. The victim's wife, Edith Ticktin, seeing the two holdup men enter the premises, immediately ran out the back door, screaming for help. The proprietor of the establishment next door immediately went to call the police. Mrs. Ticktin then heard two shots and returned to find her husband lying wounded on the floor. He died several days later.

At least four people were in the vicinity at the time of the killing. From these witnesses, police, who soon arrived on the scene, learned that two men, one wearing a light-colored raincoat, dark glasses and a hat, and the other wearing a dark jacket, were seen jumping out of a car, driven by a woman, and entering the store before the shooting and were again seen running back from the store and entering the same car, a black Oldsmobile with a license plate ending with the digits 965, after the killing. Several police officers, having received descriptions of the car, its license plate and the occupants, participated in the apprehension of the holdup participants. A car matching the description of the Oldsmobile involved was encountered within minutes of the robbery by police patrolling in the area. After a high-speed chase, which took nearly ten minutes, these police forced the black Oldsmobile to a halt. The two male occupants of the car jumped out and ignored an order to stop. One of them, the appellant, William Smith, was shot as he attempted to flee and was arrested immediately. The other male, William Barksdale, see *Commonwealth v. Barksdale,* 442 Pa. 456, 275 A. 2d 291 (1971), and the driver, Loretta Johnson, were both arrested moments later.

Two other officers, recognizing the automobile as the one which was the subject of police radio broadcasts, came upon the scene soon after the appellant and his compatriots had been captured. One officer re-

moved a three-quarter-length tan jacket, containing $1,758 in cash, from the rear seat of the automobile. Another officer removed a disassembled shotgun and two spent twelve-gauge shells from the automobile. The automobile was driven to the police station where, approximately two hours later, it was photographed and a number of items, including a light-colored raincoat and a black leather car coat, were removed from the seats, floor and trunk.

Appellant, William Smith, after being tried separately from his co-defendants, before a judge and jury, was found guilty of murder in the first degree and aggravated robbery. After denial of his post-trial motions, he was sentenced to life imprisonment for the murder, with a concurrent ten to twenty years sentence for the robbery. He now brings this appeal.

Appellant raises several contentions in his appeal for a new trial. He first argues that the eyewitness identification by the decedent's widow, Mrs. Edith Ticktin, should not have been admitted because it was based, not upon her "fleeting, frightened glance of the robber's face," but upon a photographic lineup where Mrs. Ticktin was shown nine to ten photographs, including a picture of appellant, after appellant had already been taken into custody, and without the presence of counsel for appellant. Appellant argues that this procedure violated our ruling in *Commonwealth v. Whiting*, 439 Pa. 205, 266 A. 2d 738 (1970), and, therefore, that the court erred in failing to grant his motion to suppress Mrs. Ticktin's testimony. However, we do not believe that our decision in *Whiting* should be applied retroactively. Since the photographic identifications challenged here occurred in March of 1968, and our decision in *Whiting* was not made until July 2, 1970, appellant will not be permitted to take advantage of our *Whiting* decision.

The considerations which impelled the United States Supreme Court in *Stovall v. Denno,* 388 U.S. 293 (1967), to deny retroactive effect to the rulings in *United States v. Wade,* 388 U.S. 218 (1967), and *Gilbert v. California,* 388 U.S. 263, 87 S. Ct. 1951 (1967), are equally cogent here. Prior to the Third Circuit's first opinion in *United States v. Zeiler,* 427 F. 2d 1305, 1307 (3d Cir. 1970), and our own opinion in *Whiting, supra,* the weight of authority was to the effect that an accused was not entitled to counsel while his photographs were being shown to witnesses to a crime. Law enforcement authorities fairly relied on this rule and retroactive application of our decision in *Whiting* "would seriously disrupt the administration of our criminal laws." *Stovall, supra.*[1] See also *United States v. Higgins,* 458 F. 2d 461 (3d Cir. 1972).

Appellant next argues that the evidence seized by the police from the automobile at or near 5238 Spruce Street, when Smith and his confederates were apprehended, and the evidence taken from the same car sometime after it had been driven to the police station at 55th and Pine Streets should not have been admissible at trial, since no search warrant was procured for either search. However, we believe that no warrant was required to legitimate either search under the holding of the United States Supreme Court in *Chambers v. Maroney,* 399 U.S. 42 (1970). In *Chambers, supra,* the court reaffirmed its decision in *Carroll v. United States,*

---

[1] The extent of that reliance is shown in the instant case where the Commonwealth had amassed an impressive case against appellant and his co-felons, including identification of the car and clothing, the items found in the car, and the confession of Loretta Johnson, the driver of the getaway car; did not need Mrs. Ticktin's eyewitness testimony; and declined to hold full-fledged lineup because the appellant was in the hospital suffering from wounds received in his attempt to avoid capture, which wounds the Commonwealth suggests would have been unduly suggestive of his guilt.

267 U.S. 132 (1925), that "a search warrant [is] unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." 399 U.S. at 51.

Clearly, on the basis of the reasoning in *Carroll*, alone, the first search made in the instant case would be permissible because it was made incident to arrest of the occupants of the car. As for the second search, which was not conducted until two hours after the appellant and his co-felons had been taken into custody and the car had been taken to the police parking lot, it was just such a fact situation with which the court had to deal in *Chambers*. The court admitted that once the car had been lawfully seized the police could have gotten a warrant. However, the court approved the later search because, as they explained:

". . . For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

". . . The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." 399 U.S. at 52.

Both *Commonwealth v. Cockfield*, 431 Pa. 639, 246 A. 2d 381 (1968), and *Coolidge v. New Hampshire*, 403

U.S. 443 (1971), upon which appellant seeks to rely, concern fact situations with an important distinction from the fact situation in the instant case. *Cockfield* and *Coolidge* both concerned the searches of cars which were not under the "immediate control" of the defendants at the time of their arrests and, therefore, in neither case could an initial search be justified as "incident to an arrest." *Chimel v. California*, 395 U.S. 752 (1969).[2] Since in neither *Cockfield* nor *Coolidge* could a search of the defendant's automobile have been constitutionally conducted contemporaneously with the arrest, in neither case could the car be legally seized by the police without a warrant and searched at a more convenient time and place off the highway as was done in *Chambers, supra.* As the Supreme Court explained in *Coolidge*: "Since Carroll would not have justified a warrantless search of the Pontiac at the time Coolidge was arrested, the later search at the station house was plainly illegal, at least so far as the automobile exception is concerned. Chambers, supra, is of no help to the State, since that case held only that, where the police may stop and search an automobile under Carroll, they may also seize it and search it later at the police station." 403 U.S. 443, at 463. See also, *Commonwealth v. Linde*, 448 Pa. 230, 293 A. 2d 62 (1972).

Appellant urges that we not follow *Chambers.* He argues that its value as precedent was severely limited by the Supreme Court's decision in *Coolidge,* an argument with which we take issue. See *Coolidge, supra,* footnote 20 at page 463. He also emphasizes that in

---

[2] Actually, in *Coolidge*, since the search was conducted before the *Chimel* decision, the court applied the standards of *United States v. Rabinowitz*, 339 U.S. 56 (1950), and held that to be considered "incident to the arrest," the search must be confined to the "immediate vicinity of the arrest" which the *Coolidge* search was not. 403 U.S. at 457.

the instant case, unlike *Chambers,* the police were able to make an immediate search where the car was stopped on the road. However, the quick search done in the street was no substitute for the thorough search to which the Commonwealth was legally entitled once it had a constitutional right to seize the car.

Appellant next argues that the trial court committed reversible error by warning Loretta Johnson, appellant's co-conspirator, in the presence of the jury, of her right against self-incrimination. We would agree with appellant that it is better in all such cases to give these warnings without the jury being present, so that if a co-conspirator chooses to exercise basic Fifth Amendment rights, the defendant will not be prejudiced. Compare *Namet v. United States,* 373 U.S. 179 (1963). However, when the co-conspirator chooses not to exercise those rights, such as happened in the instant case, we cannot see how the defendant is unfairly prejudiced. We are convinced that when Miss Johnson readily admitted on the stand that she had in fact planned with appellant and Barksdale to commit the crime in question, the jury would have been well aware that Miss Johnson's testimony was self-incriminating, even if they had not been present when she was warned to that effect.

Appellant's argument that the court's remarks with regard to the medical records, concerning the treatment which appellant received for the bullet wounds in his leg, entitle him to a reversal, will not be considered, since counsel made no objection at the time the court made the remarks. Compare, *Commonwealth v. Bittner,* 441 Pa. 216, 272 A. 2d 484 (1971). In any case, in view of the evidence presented in this case, including the testimony of the police as to the circumstances surrounding appellant's arrest, it would appear that the court's characterization of the medical record as

containing a "history taken from Mr. Smith in which he gave a history of having been shot in the course of a holdup" was at most harmless error. *Chapman v. California*, 386 U.S. 18 (1967).

Appellant's last contention is that the imposition of a separate sentence for robbery, to run concurrently with the life sentence which he received for the murder, constituted double jeopardy. He argues that the governing principle of law is found in *Commonwealth v. Comber*, 374 Pa. 570, 584, 97 A. 2d 343 (1953), where we said, quoting from *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 104, 21 A. 2d 920 (1941) : ". . . The true test of whether one criminal offense has merged in another is *not* (as is sometimes stated) whether the two criminal acts are 'successive steps in the same transaction' but it is whether one crime *necessarily involves* another, as, for example, rape involves fornication, and robbery involves both assault and larceny. . . ." (Emphasis in original.)

Appellant argues that, since he was convicted of a first-degree murder, it necessarily "involved" the robbery because there was no other evidence which would support a verdict of murder in the first degree. We disagree. All robberies are not murders; the two offenses do not merge. If only one of the verdicts were overturned, the other could still stand.

Judgments of sentence affirmed.

Mr. Chief Justice JONES and Mr. Justice EAGEN concur in the result.

Mr. Justice MANDERINO dissents.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Defendant William Smith and two co-defendants were apprehended while fleeing from a robbery on March 21, 1968. The motor vehicle in which they were riding was searched, without a warrant, both at the

scene of the arrest and again several hours later while the automobile was in the custody of the police at the police station. Defendant argues that the second warrantless search of the automobile while it was immobilized at the police station was in violation of the Fourth Amendment proscription against unreasonable searches and seizures. I agree and would therefore reverse the judgment and grant a new trial.[1]

Any analysis of a Fourth Amendment challenge must begin with the unequivocal protective language of the Amendment itself: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The United States Supreme Court has consistently held that the Fourth Amendment requires that "the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure. . . ." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968). In similar terms the Court said in *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507 (1967): "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Id. at 357, 88 S. Ct. at 514.

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022 (1971), the Court carefully articulated the

---

[1] There can be no doubt that the materials obtained from this second search were prejudicial to the defendant and its introduction into evidence could not be construed as harmless error. *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967). The materials seized included several articles of clothing which were instrumental in linking the defendant to the actual perpetration of the crime.

exceptions to the otherwise inviolate principle that "whenever practicable" a warrant must be obtained. Enumerated there were the following well-recognized exceptions: a search made while in "hot pursuit", *Warden v. Hayden,* 387 U.S. 294, 87 S. Ct. 1642 (1967); a seizure made when the object was in "plain view" and the police conduct was inadvertent, *Ker v. California,* 374 U.S. 23, 83 S. Ct. 1623 (1963); a search made when exigent circumstances justify the absence of a warrant, *Carroll v. United States,* 267 U.S. 132, 45 S. Ct. 280 (1925); or a search incident to an arrest, *Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034 (1969).

This constitutionally mandated framework of the Fourth Amendment has been consistently followed by this Court, until today. In *Commonwealth v. Cockfield,* 431 Pa. 639, 246 A. 2d 381 (1968), we said: "Whenever practicable, the police must obtain advance judicial approval of searches and seizures through warrant procedure, and the failure to comply with the warrant procedure 'can only be excused by exigent circumstances.'" *Id.* at 643, 246 A. 2d at 383, (quoting from *Terry v. Ohio,* 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968)). Applying this constitutional imperative to the facts here it is clear that the police had ample opportunity to procure a search warrant. The defendant's automobile had been immobilized for several hours and was safely in the custody of the police at the police station. There was "no alerted criminal bent on flight, no fleeing opportunity on an open highway after a hazardous chase." *Coolidge v. New Hampshire,* supra at 462, 91 S. Ct. at 2035-2036 (1971). Nor was there any fear that other confederates would move the automobile or remove physical evidence. 431 Pa. at 644, 246 A. 2d at 384. In short, at the time of the second search, there were no "exigent circum-

stances" that permitted the police to dispense with the constitutional requirement of obtaining a search warrant.

The Commonwealth argues, and the majority's holding implies, that because the search in question took place in an automobile, the Fourth Amendment standards for a reasonable search should somehow be relaxed. This Court heretofore has emphatically rejected the suggestion that cars are sui generis and thus not entitled to the aegis of the Fourth Amendment. As we noted in *Commonwealth v. Cockfield,* supra, "[C]ertainly an automobile is not per se unprotected by the warrant procedure of the Fourth Amendment." Id. at 644, 246 A. 2d at 384. With similar forcefulness the Supreme Court said in *Katz v. United States,* supra: "[T]he Fourth Amendment protects people, not places." 389 U.S. 347, 351, 88 S. Ct. 507, 511. In *Coolidge v. New Hampshire,* supra, a recent United States Supreme Court decision involving automobile searches, the Court cogently stated: "The word automobile is not a talisman in whose presence the Fourth Amendment fades away and disappears." 403 U.S. at 461-62, 91 S. Ct. at 2035.

Finally, I am unpersuaded that *Chambers v. Maroney,* 399 U.S. 42, 90 S. Ct. 1975 (1970), supports the result reached by the majority. The Supreme Court in *Chambers* stated: "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." Id. at 52, 90 S. Ct. at 1981. With this statement I am in complete agreement. I recognize that it would seriously undermine police efforts if they were prohibited from immobilizing a vehicle used in a crime until they had an opportunity to

secure a search warrant. In *Chambers* the Court sustained a search, without a warrant, of an automobile that was in the custody of the police. However, a crucial distinction exists between *Chambers* and this case. In *Chambers* *no* search was conducted contemporaneously with the initial arrest of the defendants. As the Court noted: "It was not unreasonable *in this case* to take the car to the station house. *All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe for the officers,* and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house." Id. at 52, n.10, 90 S. Ct. at 1981, n.10 (emphasis added).

*Chambers* simply held that when, because of legitimate concerns over their own safety, the police are unable to conduct a search contemporaneously with an arrest, an exigent circumstance arises which allows the police to subsequently search without a warrant. Such a holding is of course consistent with the Fourth Amendment general requirement of a warrant, a principle which was expressly acknowledged in *Chambers* and reaffirmed thereafter in *Coolidge,* supra. The compelling circumstance in *Chambers* is not present in this case. Here the police had an opportunity to search the automobile when the defendant was arrested, and in fact did so. During the course of that search the police recovered a weapon used in the crime, the money taken in the robbery, and a bloodstained coat. Thus there existed no "exigent circumstance" justifying the officers from not obtaining a warrant before they searched the automobile a *second time several hours later* at the police station.

In sum, I think that given the longstanding principle of requiring a search warrant whenever practica-

ble, it would be improper to give *Chambers* a reading beyond its immediate and unique factual setting. This is justified both because *Chambers* itself expressly acknowledged this principle, and because in the subsequent case of *Coolidge v. New Hampshire* the Court again restated its adherence to the general requirement of a warrant.

Accordingly, I dissent.

Mr. Justice NIX joins in this dissenting opinion.