J-S65024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DMITRIY V. LITVINOV | |
| Appellant | No. 1851 MDA 2017 |

Appeal from the Judgment of Sentence Entered October 17, 2013
In the Court of Common Pleas of Centre County
Criminal Division at Nos: CP-14-CR-0000364-2011, CP-14-CR-0000462-2010, CP-14-CR-0000464-2010, CP-14-CR-0001090-2010, CP-14-CR-0001139-2010, CP-14-CR-0001157-2010, CP-14-CR-0001158-2010, CP-14-CR-0001159-2010, CP-14-CR-0001161-2010, CP-14-CR-0001162-2010, CP-14-CR-0001163-2010, CP-14-CR-0001164-2010

BEFORE:  SHOGAN, and STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:                 **FILED JANUARY 16, 2019**

Appellant, Dmitriy V. Litvinov, appeals *nunc pro tunc*[1] from the October 17, 2013 judgment of sentence imposing an aggregate thirty-nine years and four months to seventy-eight years and eight months of incarceration for multiple counts of robbery, theft by unlawful taking, receiving stolen property, kidnapping, recklessly endangering another person, conspiracy, and related offenses.[2]  We vacate and remand for resentencing.

---

[1]  In a companion case docketed at 1771 MDA 2017, we affirmed the PCRA court's order reinstating Appellant's direct appeal rights.

[2]  18 Pa.C.S.A. §§ 3701, 3921, 3925, 2901, 2705, and 903, respectively.

The record reveals that Appellant, along with co-defendants Maksim Illarionov, Alexei Semionov, and Anatoliy Veretnov, was tried before a jury from February 8, 2011 to February 16, 2011, at which point Appellant successfully moved for a mistrial. Appellant's second jury trial commenced in June of 2012. At the conclusion of the second trial, Appellant was convicted of the aforementioned charges. On July 3, 2012, the Commonwealth filed its notice of intent to seek mandatory sentences for many of Appellant's convictions in accord with then-extant 42 Pa.C.S.A. § 9712. On September 21, 2012, the trial court imposed a sentence that included some but not all of the Commonwealth's requested mandatory minimums. The Commonwealth appealed, this Court reversed, and on October 17, 2013, the trial court imposed a new sentence including several additional mandatory minimums in accord with this Court's remand instructions. Appellant now challenges that sentence *nunc pro tunc*. The trial court did not file an order pursuant to Pa.R.A.P. 1925.[3]

Appellant raises three issues:

I. Whether the trial court erred in imposing various mandatory minimum sentences pursuant to 42 Pa.C.S.A. § 9712, in

_____

[3] The trial court believed the instant appeal should be held in abeyance pending the outcome of the Commonwealth's appeal at 1771 MDA 2017. As set forth in the main text, the Commonwealth concedes that the mandatory minimum sentences are unconstitutional. We find Appellant's remaining issues lacking in merit. We will not remand for a Rule 1925 order, because the absence of a trial court opinion has not hampered our review.

> violation of *Alleyne v. United States*, 133 S.Ct. 1251 (2013) and its progeny?
>
> II.   Whether the Commonwealth appears to have engaged in prosecutorial misconduct, suborned perjury, committed a *Brady*[4] violation and/or otherwise failed to correct erroneous and misleading testimony of their star witness, confidential informant Lindsay Coatman, such that, at a minimum, Appellant's case should be remanded to the trial court for an evidentiary hearing to develop a record on this colorable issue?
>
> III.   Whether the trial court erred in allowing the Commonwealth to elicit testimony from their witness, Timothy Henry regarding uncharged prior bad acts of Appellant, including that Appellant allegedly made threats of violence against the District Attorney and other members of law enforcement and that he made a comment about escaping from the county jail while awaiting trial?

Appellant's Brief at 31 (some capitalization omitted).

Appellant's first assertion of error requires a remand for resentencing. In *Alleyne*, the United States Supreme Court held that any fact triggering an increased penalty, such as a mandatory minimum sentence, must be submitted to the fact finder and proved beyond a reasonable doubt. Prior to *Alleyne*, § 9712 of the Judiciary Code provided for the imposition of mandatory minimum sentences based on the trial court's assessment of the facts at sentencing. Instantly, the sentencing court imposed mandatory minimums based on Appellant's visible possession of a firearm during his offenses. *Alleyne* invalidated that practice. The courts of this Commonwealth have held that our then-extant mandatory minimum procedure was

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

unconstitutional under **Alleyne** and that the unconstitutional provisions of § 9712 were not severable from the remainder of the statute. **Commonwealth v. Wolfe**, 140 A.3d 651 (Pa. 2016); **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*), **appeal denied**, 121 A.3d 496 (Pa. 2015); **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014), **appeal denied**, 124 A.3d 309 (Pa. 2015). The Commonwealth concedes the validity of Appellant's first argument. Commonwealth's Brief at 8. Because the sentencing court imposed mandatory minimum sentences pursuant to a statutory scheme that has since been declared unconstitutional, we must vacate the judgment of sentence and remand for resentencing in accord with **Alleyne** and its Pennsylvania progeny.

Next, Appellant argues the Commonwealth engaged in prosecutorial misconduct and/or committed a **Brady** violation in its presentation of the testimony of witness Lindsay Coatman. **Brady** held that the prosecution's failure to disclose evidence favorable to the defendant violates due process of law if the evidence is material to the defendant's guilt or to the punishment imposed. **Brady**, 373 U.S. at 87. Coatman was a government informant who accompanied Appellant and his co-defendants during the crimes at issue, in one case wearing a wire. He testified about Appellant's participation in the charged crimes. As of trial, Coatman had pled guilty to unrelated drug and firearms charges, but had yet to be sentenced. He testified that he expected jail time but he eventually received only probation. From this, Appellant

infers: 1) that Coatman lied on the stand; 2) that the prosecutor failed to correct Coatman's testimony despite knowing of its falsehood; 3) that Coatman received a promise of leniency from the prosecution in exchange for his testimony in this case; and 4) that the prosecution failed to disclose the existence of its deal with Coatman.

The record provides no support for any of Appellant's inferences. Indeed, Appellant was aware of the plea offer Coatman signed, in which the Commonwealth recommended two and one-half to five years of incarceration followed by five years of probation. Instead, after the conclusion of Appellant's trial, Coatman received six years of probation. Coatman's testimony was as follows:

Q. In fact, had you pled guilty to those charges?

A. Yes, sir. I pleaded guilty the other year.

Q. Do you know what penalty you're facing for that?

A. Three to five or – a long time.

Q. Have you been sentenced yet on those charges?

A. Yes sir, I pleaded guilty, yes.

Q. Okay, but did you get sentenced yet or not?

A. (No response).

Q. Did you go to jail for that charge yet?

A. No, sir.

Q. Okay. And have any promises been made to you by the District Attorney's office or anyone else regarding what's going to happen with your charges?

      A.     No, none at all, none at all.

N.T. Trial, 6/20/12, at 1156.

On cross-examination, Coatman testified as follows:

      Q.     Did you testify on direct examination that you know what sentence you're getting?

      A.     Not really.

      Q.     Not really?

      A.     No, I said I did it.  I'm going to do time.

      Q.     You pled guilty in November of 2009, right?

      A.     Correct.

      Q.     You still haven't been sentenced yet, right.

      A.     I don't know.  I know they told me I was going to jail.

      Q.     Have you gone to jail yet, sir?

      A.     No.

      Q.     This is three years from the date of the arrest and almost two and a half years from when you pled guilty, right.

      A.     Okay.

      Q.     Do you agree with me?

      A.     I'll agree with you.

      Q.     And you have no idea when you are getting sentenced, right?

      A.     No.  My lawyer keeps on filing continuances.

      Q.     Do you know why this case keeps getting continued?

      A.     Nope.  That's why I hired a lawyer.

      Q.     You don't think it's because you're testifying here?

A.    It could be.

Q.    It could be, but you're not sure?

A.    It's not up to me.

Q.    Did you sign a plea offer in this case, sir.

A.    I signed paperwork.

[…]

Q.    Did you ever see this plea offer?

A.    Hell, I don't remember.

Q.    Is your name Lindsay Coatman?

A.    Yeah.

Q.    You don't remember seeing this?

A.    Not really.

Q.    Does this say that the terms of your sentence are two and a half to five years on count 1, SCI, followed by five years of consecutive probation on count 3?

A.    Yep, that's what it says.

Q.    And it also says other family members will not be charged for this incident?

A.    Yes, sir.

Q.    Is that what it says?

A.    That's what it says.

Q    But you don't remember seeing it?

A.    It's been a while.

Q.    Do you remember agreeing to those terms?

A.    That's why I pleaded guilty.

[…]

N.T. Trial, 6/21/12, at 1316-18.

In essence, Appellant's argument on this issue is purely speculative. The record contains no evidence of any agreement whereby Coatman would not receive jail time. The record contains no evidence that Coatman lied when he testified that he expected jail time. The record also contains no indication that Coatman's probationary sentence was anything other than an exercise of that sentencing court's discretion. Defense counsel cross-examined Coatman extensively on the plea agreement, the delay in sentencing, and the possibility that the delay in Coatman's sentencing was related to the need for his testimony at Appellant's trial. The jury was free to assess Coatman's credibility accordingly.

Our Supreme Court addressed a similar scenario in **Commonwealth v. Barksdale**, 275 A.2d 291 (Pa. 1971). There, a Commonwealth witness who drove the getaway car after her co-defendant committed a murder, testified against the co-defendant. She testified that she received no promises from the Commonwealth in exchange for her testimony, and she received a lesser sentence than the co-defendant did. Our Supreme Court noted that there was "no clear proof that the prosecutor's office made any deal with the witness." *Id.* at 459. "In addition, **it is far from unusual for a felon who testifies against a co-defendant to receive less severe treatment from the district attorney and the court even though no specific promises are made."** *Id.* at 460 (emphasis added). The witness expressly denied the

existence of any promise, and co-defendant's counsel had a full opportunity to cross-examine her on her motives for cooperating with the Commonwealth. *Id.* The Supreme Court therefore rejected the co-defendant's request for a remand and special hearing on the issue. *Id.*

Instantly, the applicability of *Barksdale* is clear. There, as here, the appellant insinuated that a Commonwealth witness lied on the stand and that the prosecution made promises in exchange for the testimony. There, as here, the witness denied receiving any such promise, and the appellant produced no evidence to contradict that testimony, other than the sentence the witness received. There, as here, the appellant cross-examined the witness on her motives for cooperating with the Commonwealth. Finally, the Supreme Court opined that a lesser sentence for a cooperating witness is not unusual, regardless of any specific promises from a prosecutor. Given all of the foregoing, we conclude that no relief is due.

Finally, Appellant argues that the trial court erred in permitting the testimony of Timothy Henry, Appellant's cellmate. Henry testified that Appellant expressed threats of violence against the prosecutor in this case, and that he spoke of plans for escaping from prison. We review the trial court's evidentiary rulings for abuse of discretion. *Commonwealth v. Orie*, 88 A.3d 983, 1000 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014). An abuse of discretion occurs where the trial court's decision "reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such

lack of support to be clearly erroneous." *Id.* Rule 404(b) of the Pennsylvania Rules of Evidence prohibits admission of bad acts that are not the subject of prosecution for the sole purpose of demonstrating the defendant's bad character or propensity to commit crimes. Pa.R.E. 404(b)(1). Evidence of other bad acts may be admissible, however, for another purpose, such as to demonstrate the defendant's consciousness of guilt. *Commonwealth v. Flamer*, 53 A.3d 82, 87 (Pa. Super. 2012).

> It is well settled that when a person has committed a crime, and knows that he is wanted for it, any attempt by that person to flee or conceal his whereabouts, to escape from custody or resist arrest, to conceal or destroy evidence, to give false statements or testimony, to intimidate or attempt to influence witnesses, or to otherwise engage in conduct designed to avoid apprehension or prosecution for such crime may be admissible as evidence of consciousness of guilt, and may, along with other evidence in the case, form a basis from which guilt may be inferred.

*Commonwealth v. Pestinikas*, 617 A.2d 1339, 1347–48 (Pa. Super. 1992).

The *Flamer* Court held that evidence of a conspiracy among co-defendants to kill a witness in order to preclude the witness' testimony at trial was admissible as consciousness of guilt. *Flamer*, 53 A.3d at 87. In *Pestinikas*, this Court held that the trial court did not err in admitting evidence that the defendants attempted to avoid prosecution by exerting political influence on the prosecutor. *Pestinikas*, 617 A.2d at 1348. We also have held that post-arrest threats can be admissible as consciousness of guilt. *Commonwealth v. Sanchez*, 610 A.2d 1020, 1026-28 (Pa. Super. 1992),

*appeal denied*, 620 A.2d 490 (Pa. 1993) (holding that the defendants post-arrest talk of suicide was admissible as consciousness of guilt).

Instantly, as in ***Sanchez***, the trial court admitted evidence of Appellant's post-arrest threats. Specifically, Appellant's cellmate testified that he expressed his intent to kill the prosecutor and/or to escape prosecution by overtaking the guards during his transport from prison to the courthouse. These threats, in accord with the law as expressed in ***Pestinikas***, plainly evidence Appellant's plans to avoid prosecution for the charged offenses. We discern no abuse of discretion in the trial court's decision to admit them.

In summary, Appellant has presented a meritorious argument in support of his request for re-sentencing. His remaining arguments lack merit. We therefore vacated the judgment of sentence and remand for sentencing in accord with this Memorandum.

Judgment of sentenced vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2019

- 11 -