J-S37029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                          :           PENNSYLVANIA
                          :
          v.                 :
                          :
                          :
LAFENUS L. BURTON,            :
                          :
          Appellant.        :      No. 1874 EDA 2018

Appeal from the Judgment of Sentence Entered, May 31, 2018,
in the Court of Common Pleas of Delaware County,
Criminal Division at No(s):  CP-23-CR-0004259-2016.

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:        **FILED OCTOBER 28, 2019**

Lafenus L. Burton appeals from the judgment of sentence, imposing an aggregate of five-and-half to eleven years' incarceration.  A jury convicted him of conspiracy to possess cocaine with intent to deliver and possession of cocaine.[1]  Burton says police violated his constitutional rights when they searched his minivan and seized the drugs inside it.  Thus, he contends the court of common pleas should have suppressed the Commonwealth's physical evidence against him.  Burton also asserts the evidence at trial was insufficient to convict him of either crime.  As we explain, no appellate relief is due, and we affirm.

Burton and his 13 co-defendants ran an elaborate scheme to distribute cocaine in 2015.  To dismantle their criminal enterprise, the Pennsylvania

---

[1] 18 Pa.C.S.A. § 903; 35 P.S. § 780-113(a)(16).

State Police and local officers conducted numerous controlled buys and video surveillance throughout Delaware County, including outside Burton's residence. Investigators also obtained six wiretap orders from this Court, and a judge of the court of common pleas issued various search warrants. Police intercepted and transcribed phone calls and text messages from, to, and between the drug dealers numbering in the thousands.

A camera police positioned outside Burton's home recorded him driving a green, Chrysler Town & Country minivan. The investigators eventually obtained a search warrant for his residence. Among other things, the trial judge who signed that warrant authorized police to search for and to seize "indicia of . . . ownership of the . . . vehicle(s) described herein, including but not limited to . . . keys." Attachment "A" to Search Warrant at No. X53-0051-B, Burton's Motion to Suppress Evidence, 9/19/16.

When they executed the search warrant, officers uncovered no drugs. Instead, they found $2,000 in a safe and $800 in the pocket of a pair of pants next to Burton's bed. Also, in the pants were car keys to his Town & Country minivan. The police took those keys, located the vehicle on the street outside, unlocked it, and drove the minivan back to the barracks. Police then obtained a warrant to search it. Inside they uncovered Burton's expired driver's license, a vehicle registration in Burton's name, 10 bags of cocaine totaling 87 grams, and a substance commonly used to "cut" (*i.e.*, dilute) cocaine for retail sale.

Law enforcement arrested Burton and his co-conspirators. Burton filed a motion to suppress the evidence. The court of common pleas denied the

motion, and the case proceeded to a jury trial. The jury convicted Burton, and the trial court sentenced him as previously described. This timely appeal followed.[2]

Burton raises three claims of error, which we have reordered to accord with this Court's penchant for addressing sufficiency-of-the-evidence claims first:[3]

> A. Whether the trial court erred in denying [his] oral motion for judgment of acquittal, and therefore the sufficiency of the evidence for the convictions of conspiracy to [possess] controlled substance with the intent to deliver and possession of a controlled substance, when the Commonwealth did not present any testimony or evidence that [Burton] knowingly or intentionally possessed a controlled substance or that [he] was in a conspiracy with another person to commit the crime of delivery of a controlled substance.
>
> B. Whether the trial court erred in denying [his] motion to suppress evidence when there was false or misleading statements in the affidavit of probable cause of the search warrant for the minivan . . . .
>
> C. Whether the trial court erred in denying [his] motion to suppress evidence when the minivan key, and the minivan itself, were not listed in the application for

_____

[2] Both Burton and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

[3] *See Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super. 2013) (en banc) (citing *dicta* from *Commonwealth v. Stokes*, 38 A.3d 846 (Pa. Super. 2011) and elevating it into a "best practice" by stating, "Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first.").

> search warrant of [Burton's home], and both [were]
> seized without a warrant . . . .

Burton's Brief at 1-2.

*A.*    *Sufficient Evidence Supports Burton's Criminal Convictions.*

Burton challenges the evidence against him.  He claims that it is legally insufficient to support his convictions of (1) conspiracy to possess cocaine with intent to deliver and (2) possession of cocaine.[4]  The learned trial court authored an expansive, detailed, and well-reasoned opinion in support of its refusal to overturn the jury's verdicts of guilty.

That court described the elements and the evidence of Burton's two crimes as follows:

> [First, p]ursuant to 18 Pa. C.S.A. § 903:  A person is guilty
> of conspiracy with another person or persons to commit a
> crime if with the intent of promoting or facilitating its
> commission he:
>
>> (1) agrees with such other person or persons that they
>> or one or more of them will engage in conduct which

_____

[4] Our scope and standard of review are clear:

> Challenges to the sufficiency of the evidence are governed
> by our familiar and well-established standard of review.  We
> consider the evidence presented at trial *de novo*.  We are
> obliged to evaluate that evidence in the light most favorable
> to the Commonwealth, as the verdict winner, and we draw
> all reasonable inferences therefrom in the Commonwealth's
> favor.  Through this lens, we must ascertain whether the
> Commonwealth proved all of the elements of the crime at
> issue beyond a reasonable doubt.  This is a question of law.
> Our scope of review is plenary.

***Commonwealth v. Chambers***, 188 A.3d 400, 409 (Pa. 2018) (citations omitted).

constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

[18 Pa. C.S.A. § 903.]

The [trial] testimony clearly demonstrates that the surveillance and investigation into the drug-trafficking ring . . . was not just a one-day investigation; rather, a concerted and intensive effort by several, law-enforcement departments, which included undercover surveillance, confidential informants, wiretap applications, listening to thousands of phone calls, applying for and serving search warrants, as well as numerous meetings and briefings about the key players in the trafficking ring. Sergeant Skahill's interpretation of the phone calls between Townsend and [Burton] were not based upon a hunch. The interpretations were based upon years of experience and training in undercover, drug-trafficking investigations on a broader scale, as well as on an intimate level with this investigation, becoming familiar with Townsend and his distributors, the interworking of their business, actions, and lingo. Sergeant Skahill knew the days and times Townsend received cocaine; he knew the slang which the group used to relay when they needed product and when they had the money to [give] Townsend back.

Sergeant Skahill testified that the most common exchange for drugs is money, particularly cash, and [Burton] had several stashes of large quantities of cash, hidden all over his house. The calls themselves paint the picture. When [Burton] needed supply he would call Townsend, Townsend would retrieve it for him, and call him back when it was secured. In addition, Sergeant Skahill knew that Townsend's practice was to front the drugs to his distributors, who then paid him back after the product was sold, further supported by [Burton] on the phone calls, telling Townsend that he is good and that he is ready for him to come pick up the cash. All of the evidence unequivocally demonstrates that [Burton], agreed with another person, namely his brother, Townsend, that they

- 5 -

would engage in conduct which constituted the crime of delivering cocaine, a controlled substance.

[Second, pursuant] to 35 P.S. § 780-113(a)(16): The following acts and the causing thereof within the Commonwealth are hereby prohibited: Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

"Possession can be found by proving actual possession, constructive possession, or joint constructive possession. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances." ***Commonwealth v. Parrish***, 191 A.3d 31, 37 (Pa. Super. 2018). "In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." ***Id.***, 191 A.3d at 38.

The evidence presented by the Commonwealth at trial was sufficient to establish that [Burton] knowingly or intentionally possessed, cocaine, a controlled substance. [He] admitted during his own testimony that the keys located in his pocket on the day of the search warrant execution were his; those keys were the keys to the Chrysler minivan that was parked right across the street from his house and the same exact minivan and plate number as the one both Officer Donohue and Chief Nolan would see [Burton] driving around Chester during their everyday routine patrols.

- 6 -

> Located inside [Burton's] vehicle were numerous items that had [his] name on them; including his wallet containing his license and the car registration. Perhaps, even more telling were documents such as rental car agreements and bills, documents that could only be left in the car by [Burton, whose] own testimony about owning the car but lending it out was incredible and riddled with contradictions. In addition, Sergeant Skahill explained the reasoning behind storing the drugs in the vehicle rather than in [Burton's] home or on his person. Keeping the drugs close by allowed [him] to have constructive possession over the drugs, *i.e.*, the ability to exercise dominion and control over the drugs whenever he needed to make a sale.

Trial Court Opinion, 11/29/18, at 19-21.

We agree with the trial court and adopt its analysis of the sufficiency issue as our own. The evidence of Burton's guilt of the two offenses for which the jury convicted him is overwhelming.

*B.    Burton Waived His Attack upon the Affidavit of Probable Cause.*

Burton also argues the court of common pleas should have suppressed the Commonwealth's evidence, because police provided the judge who issued a search warrant for his minivan with false and misleading information in their affidavit of probable cause. Throughout his argument, Burton heavily relies upon Trooper Stienmetz's suppression and trial testimony about the affidavit of probable cause. However, Burton never cites to the actual affidavit.

The Commonwealth suggests this is due to Burton's failure to make the affidavit a part of the appellate record. *See* Commonwealth's Brief at 6 n.2, 8 n.3. It argues the affidavit's absence causes waiver. *Id.* at 11.

We agree. It is well-settled that "the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and

not upon the appellate courts." ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) (citing Pa.R.A.P. 1931). If an appellant does not include the evidence supporting an appellate issue in the certified record, that appellate issue "must be deemed waived for the purpose of appellate review." ***Id.***

Here, Burton asks us to review the affidavit of probable cause that the police used to obtain a search warrant for his minivan. That affidavit was his only exhibit at the suppression hearing. Yet, on appeal, he has not provided us with it – the language of which is the basis for his claim of error.

When police have obtained a warrant, the suppression court's scope of review is limited to the affidavit of probable cause. If a defendant seeks to suppress "evidence obtained pursuant to a search warrant, no evidence shall be admissible [in the suppression court] to establish probable cause other than the affidavits . . . ." Pa.R.Crim.P. 203(D). And, when the Commonwealth wins the suppression hearing, our scope or review of that hearing is limited to "only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Baker***, 24 A.3d 1006, 1015 (Pa. Super. 2011), *affirmed*, 78 A.3d 1044 (Pa. 2013).

Because the Commonwealth had to confine its case to the four corners of the affidavit, that affidavit is invaluable to our appellate review. Without it, none of the Commonwealth's evidence (or the suppression court's basis for its findings of fact) is of record. The only evidence of record remaining within

our scope of review is the uncontradicted evidence that Burton, the losing party, offered. Lacking the affidavit, we cannot differentiate between Burton's uncontradicted and contradicted evidence.

Thus, he has placed us in a quandary.[5] Burton's omission of the Commonwealth's evidence (the affidavit) from the certified record has crippled our ability to review this claim of error. We cannot review the allegedly false and misleading language of an affidavit we do not possess.

Under *Preston*, *supra*, we must dismiss this issue as waived.

C.    *The Seizure of Burton's Minivan Key and Minivan Was Constitutional.*

As his final, appellate issue, Burton challenges the seizure of the minivan keys from his pants' pocket and the seizure of his minivan without a search warrant for the vehicle. He argues that the police did not list the minivan's keys as a target of their search warrant; thus, he claims they had no right to take them. Similarly, he asserts that, because the minivan was parked a hundred feet away from the house, the investigators had no search warrant to enter or to seize it.

---

[5] This Court's staff contacted the court of common pleas to ensure that the affidavit was not missing due to an inadvertent, ministerial error of record keeping. The law clerk to the judicial officer who heard the suppression hearing informed us that the "affidavit/application for a search warrant for the Butler Street residence" was not in the trial judge's chambers. August 19, 2019 E-mail of Rachael L. Kemmey, Esq., Law Clerk to John P. Capuzzi, J. (C.C.P. Delaware) to Appellate Counsel and Superior Court Staff. Therefore, we conclude that only Burton's failure to ensure the recordation of the affidavit caused the gap in the appellate record, rather than any "breakdown in the processes of the court" that we could rectify under Rule of Appellate Procedure 1926(b).

Burton does not challenge the issuing authority's finding that probable cause existed for the police to conduct the search of Burton's home. Instead, he challenges the officers' actions in executing the search warrant. We are therefore reviewing the suppression court's opinion of those police actions.

Accordingly, our scope of review shifts from the affidavit of probable cause to the factual findings of the suppression court. We "determine whether [those] factual findings are supported by the record. If so, we are bound by those findings." **Commonwealth v. Howard**, 762 A.2d 360, 361 (Pa. Super. 2000). Our scope of review is not plenary; we "are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." **In re L.J.**, 79 A.3d 1073, 1080 (Pa. 2013). Also, we may "not simply comb through the record to find evidence favorable to a particular ruling. Rather, [we must] look to the specific findings of fact made by the suppression court," based upon the record that was developed in the suppression court.[6] **Id.** at 1085.

Our standard of review for a suppression court's factual findings remains deferential, while our standard for reviewing its legal conclusions reaches the zenith. As the Supreme Court of Pennsylvania has stated:

---

[6] Thus, the Commonwealth's citation to and reliance upon the November 24, 2018 trial transcript for the proposition that Burton disowned the keys and the minivan is misplaced. **See** Commonwealth's Brief at 13 n.8. That testimony is outside our scope of review.

> When we state that part of our "task" is to determine whether the record supports the suppression court's factual findings, this is another way of expressing that our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations. In other words, if the record supports the suppression court's findings, we may not substitute our own findings. In stark contrast, our standard of review of the suppression court's legal conclusions is *de novo*: appellate courts give no deference to the suppression court's legal conclusions.

*Id.* at 1080 n.6. (some punctuation and citations omitted).

Under both the federal and state constitutions, search warrants must particularly describe the items to be seized under their terms. For example, Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue **without describing them as nearly as may be**, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

*Id.* (emphasis added).

Burton claims his minivan keys were not listed in the search warrant for his residence. He is incorrect. The search warrant listed vehicle keys as one of the items for the police to search for and to seize. The warrant authorized the police to seize any "indicia of . . . ownership of the . . . vehicle(s) described herein, including but not limited to . . . keys." Attachment "A" to Search Warrant at No. X53-0051-B, Burton's Motion to Suppress Evidence, 9/19/16.

We therefore conclude that the minivan keys were permissibly seized under the terms of the search warrant for Burton's home.

He also claims that his Town & Country Minivan did not appear in that search warrant. While this is true, its absence from the warrant does not end our inquiry.

Police may seize a person's property without a warrant if an exception to the warrant requirement exists. "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Romero*, 183 A.3d 364, 396 (Pa. 2018). One such exception to the warrant requirement is the automobile exception. *See Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (adopting the federal automobile exception under Art. I, § 8 of the Constitution of the Commonwealth of Pennsylvania). Thus, we have said, "where police possess probable cause to search a car, a warrantless search is permissible." *In re I.M.S.*, 124 A.3d 311, 317 (Pa. Super. 2015).

Moreover, when investigators have probable cause to undertake a warrantless search of an automobile, they simultaneously have constitutional justification to seize it and search it afterwards. "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *see also Commonwealth*

***v. Holzer***, 389 A.2d 101 (Pa. 1978) (applying ***Chambers*** under Pennsylvania law). Hence, Burton's fixation upon the minivan's absence from the search warrant is misplaced. That fact, standing alone, is an incomplete basis for this Court to reverse the suppression court's order, because the seizure of the vehicle was permissible without a warrant.[7]

As the Supreme Court of Pennsylvania held in ***Holzer***:

> in considering the reasonableness of a given search or seizure of an automobile, the need for a warrant is often excused by exigent circumstances. The reasons are two-fold. First, a vehicle is highly mobile and the likelihood is therefore great that it and its contents may never be found if police were prohibited from immobilizing it until a warrant can be secured. ***Commonwealth v. Smith***, 452 Pa. 1, 7, 304 A.2d 456, 459 (1973), *quoting* ***Chambers v. Maroney***, 399 U.S. 42, 57, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
>
> Second, one's expectation of privacy with respect to an automobile is significantly less than that relating to one's home or office . . . Further, where the alleged illegal activity does not invade the interior of the car, the chances are even greater that no expectation of privacy has been infringed.
>
> It is reasonable, therefore, for constitutional purposes, for police to seize and hold a car until a search warrant can be obtained, where the seizure occurs after the user or owner has been placed into custody, where the vehicle is located on public property, and where there exists probable cause to believe that evidence of the commission of a crime will be obtained from the vehicle. ***Cardwell v. Lewis***, 417 U.S. 583, 593-94, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); ***Chambers v. Maroney***, ***supra*** 399 U.S. at 52, 90 S.Ct. 1975.

---

[7] We also note that Burton does not contend that the police lacked probable cause to seize his vehicle, and we may not supply him with such an argument. "When an appellant's argument is underdeveloped, we may not supply [him] with a better one." ***Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 884 (Pa. Super. 2019).

***Holzer***, 389 A.2d at 106–07.

In the present case, the conduct of the police was reasonable. Burton was under an extensive investigation (along with family members and other suspects) for drug trafficking. The police executed a valid search warrant for his home and, in the process, discovered the keys to the Town and Country Minivan they had observed him driving to and from the residence.

Burton had parked his minivan on a public street. He or any one of his alleged co-conspirators was still at large, and his family lived in the vicinity. Thus, if Burton had a spare key for the minivan, he could have easily driven the vehicle away while the police went to obtain a search warrant for it. Or he or one his suspected co-conspirators could have had the minivan towed away or cleaned it out, while police applied for a search warrant and met with a magistrate. Finally, the police protected Burton's right of privacy under both constitutions, because, when they seized the minivan, investigators refrained from searching it until **after** convincing a neutral magistrate that the search was justified with probable cause and obtaining a search warrant. Thus, as in ***Holzer***, "[t]he warrantless seizure of the automobile was proper, as was the trial court's denial of the motion to suppress." ***Id.***, 389 A.2d at 107.

In sum, none of Burton's three issues warrants relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/28/19